**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHRISTIAN A. GONZALEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 21 CV 6243 |
| v. ) | |
| ) | Hon. Jeffrey I. Cummings |
| J. RODRIGUEZ (#17897), D. RASIC, ) | |
| A. SACUTA (#17496), J. CARDEN (#17367), ) | |
| E. DURANT (#3214), S. STROH (#17808), ) | |
| J. CHAVEZ (02), T. BEYER (02), ) | |
| B. CONTORNO, A. DUHARKIC, J. VAN ) | |
| GIESEN, M. KRZEMINSKI, W. FILIPIAK, ) | |
| SEARGEANT SHEEHAN, ) | |
| THOMAS J. DART, and COOK COUNTY, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## INTRODUCTION

Defendants' motion to dismiss should be denied. (ECF No. 110.) Defendants argue that Plaintiff Christian A. Gonzalez's ("Mr. Gonzalez") claim against Defendant Sheehan and *Monell* claim, which are new to Mr. Gonzalez's amended complaint, are untimely. Both claims, however, relate back to the original complaint under Rule 15(c) because they arise out of the same occurrence, Defendants do not identify any prejudice, and Defendant Sheehan and the *Monell* Defendants had sufficient notice of the claims. At a minimum, discovery is needed to determine what these Defendants knew or should have known. Mr. Gonzalez's claim against Sheehan is timely also due to equitable tolling because, despite exercising diligence, he did not learn of Sheehan's involvement until recent discovery. Defendants also argue that Mr. Gonzalez fails to allege a widespread practice for purposes of his *Monell* claim, but Defendants mischaracterize what amounts to numerous alleged instances of officers beating detainees in elevators without security cameras. Accordingly, Counts II and III each survive Defendants' motion to dismiss.

## FACTUAL BACKGROUND[1]

On May 7, 2020, Mr. Gonzalez was in custody at Cook County Jail. (ECF No. 84, Am. Compl. ("Am. Compl.") ¶ 23.) Following an altercation with officers in his cell, Mr. Gonzalez was pulled out of the cell with his wrists cuffed behind his back and his legs shackled. (*Id.* ¶ 27.) Mr. Gonzalez's was pushed up against a wall for a pat-down search. (*Id.* ¶ 27.)

---

[1] Some of the facts in this section are not in the amended complaint or apparent from the public docket. Mr. Gonzalez was not required to plead around affirmative defenses like the statute of limitations. *See Covington v. Mitsubishi Motor Mfg. of Am., Inc.*, 154 F. App'x 523, 524-25 (7th Cir. 2005). Mr. Gonzalez provides these additional facts, which are consistent with his amended complaint, to defeat the motion to dismiss on statute of limitations grounds. *See Hentosh v. Herman M. Finch Univ. of Health Scis./The Chi. Med. Sch.*, 167 F.3d 1170, 1173 n.3 (7th Cir. 1999) ("[A] plaintiff need not put all of the essential facts in the complaint; he may add them by affidavit or brief in order to defeat a motion to dismiss if these facts are consistent with the allegations in the complaint." (quotation omitted and alterations adopted)).

1

Mr. Gonzalez was then escorted out by Defendants Rodriguez, Rasic, and Duharkic, bent over at the waist with his face pointed at the ground, to the elevator in Division 9. (*Id.* ¶¶ 29, 31.) Defendant Sheehan walked with them with his body-worn camera activated, and, once they arrived at the elevator, called the elevator. (*Id.* ¶ 31.) On information and belief, there was (and still is) no security camera in that elevator. (*Id.* ¶ 32.) Rodriguez, Rasic, and Duharkic escorted Mr. Gonzalez into the elevator, positioning Mr. Gonzalez so his face was against the back righthand corner. (*Id.* ¶ 33.) Defendant Chavez also entered the elevator. (*Id.*) Sheehan then turned and walked away for about 30 seconds, ensuring, for that period of time, there was no camera recording Mr. Gonzalez or the officers surrounding him in the elevator. (*Id.* ¶ 34.)

While Sheehan was away, Rodriguez, Rasic, and Duharkic brutally attacked Mr. Gonzalez, repeatedly kneeing and punching him in the face and head, while Chavez did nothing. (*Id.* ¶¶ 38–40.) Sheehan ran back to the elevator; by the time he returned, the assault had ended. (*Id.* ¶ 41.) Sheehan entered the elevator and Mr. Gonzalez was escorted to a holding cell. Mr. Gonzalez was escorted bent over at the waist with his face pointed toward the ground. (*Id.* ¶ 42.) Sheehan's body-worn camera footage (and other footage) shows blood streaked in the back righthand corner of the elevator dripping down to the floor, on Mr. Gonzalez's uniform, and on Mr. Gonzalez's face. (*Id.* ¶¶ 43–44.)

Medical staff subsequently called 911 and Mr. Gonzalez was transported to the hospital, where he was treated for acute blunt head and facial trauma, the effects of which he continues to deal with today. (*Id.* ¶¶ 45–50.)d

Following the May 7, 2020 assault, Mr. Gonzalez received a disciplinary ticket related to the events of that day. That ticket listed as "witnesses" the names of 13 officers. Sheehan was not

2

listed. Mr. Gonzalez filed a grievance against the same 13 officers listed on the ticket. (ECF No. 1 at 13–14.) The grievance process was completed on August 27, 2020. (*Id.* at 12.)

Mr. Gonzalez's *pro se* complaint was received by the Clerk's office on November 22, 2021. (ECF No. 1.) The complaint alleged an excessive force claim (Count I) and a failure to intervene claim (Count II) based on the May 7, 2020 assault. (*Id.*) Mr. Gonzalez named as Defendants the 13 officers listed in his grievance. (*Id.*) The Court screened the complaint and it was filed on December 6, 2021. (ECF Nos. 5–6.) From there, Mr. Gonzalez litigated for more than one year without legal representation.

On February 28, 2023, Mr. Gonzalez filed a motion for appointment of counsel. (ECF No. 61.) The undersigned counsel was appointed on April 12, 2023, and entered his appearance on April 19, 2023. (ECF Nos. 70–71.) On April 25, 2023, defense counsel provided the documents exchanged in discovery to date. On July 28, 2023, Defendants produced certain video footage relating to the events on May 7, 2020, including from Sheehan's body worn camera, which Mr. Gonzalez and his counsel promptly reviewed.

The footage shows that, on May 7, 2020, Mr. Gonzalez was transported from his cell to the holding cell with his face either toward the ground or against a wall. (*See* ECF No. 84 ¶¶ 27–29, 43.) The footage depicts Sheehan's role in escorting Mr. Gonzalez on May 7, 2020.

The undersigned counsel conducted a prompt and thorough factual investigation, conferred with Mr. Gonzalez, and, on August 18, 2023, Mr. Gonzalez filed a motion for leave to file an amended complaint. (ECF No. 82.) The amended complaint conformed the factual allegations to the evidence, added Sheehan as a Defendant in Count II for failure to intervene, and added a *Monell* claim in Count III against Defendants Dart and Cook County. The Court granted the motion on August 21, 2023, and Mr. Gonzalez filed his amended complaint that same day. (ECF No. 84.)

3

**LEGAL STANDARD**

To defeat a motion to dismiss, a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "Plausibility does not mean probability: a court reviewing a 12(b)(6) motion must ask itself *could* these things have happened, not *did* they happen." *Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cty.*, 804 F.3d 826, 833 (7th Cir. 2015) (quotation omitted).

**ARGUMENT**

**I.  Mr. Gonzalez's Failure to Intervene Claim Against Sheehan Is Timely.**

Sheehan argues that Mr. Gonzalez's Count II for failure to intervene against him is barred by the statute of limitations. (Mot. at 4–5.) This is an affirmative defense that Mr. Gonzalez was not required to "anticipate or overcome" in his amended complaint. *See Covington v. Mitsubishi Motor Mfg. of Am., Inc.*, 154 F. App'x 523, 524–25 (7th Cir. 2005). For this reason, the Seventh Circuit considers it "irregular" to dismiss a claim under Rule 12(b)(6) based on an affirmative defense; such a dismissal is appropriate only where the plaintiff has pleaded himself out of court by "admit[ting] all the ingredients of an impenetrable defense." *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir.2004); *Xechem, Inc. v. Bristol–Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir.2004). Dismissal pursuant to the statute of limitations is not appropriate if "discovery is needed to fill-in factual gaps." *Shuhaiber v. Dec*, 2020 WL 6781798, at *2 (N.D. Ill. Nov. 17, 2020).

Here, Mr. Gonzalez's claim against Sheehan is timely under both (A) the relation-back doctrine set forth in Fed. R. Civ. P. 15(c)(1)(C) and (B) the doctrine of equitable tolling. Accordingly, Defendants' motion to dismiss Count II fails.

4

### A. Count II Relates Back To The Date Of The Original Complaint.

Under Rule 15, a defendant named for the first time in an amended complaint may be treated as if named in the original complaint under the relation back doctrine if:

> the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence . . . in the original pleading . . . and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C); *see Rodriguez v. McCloughen*, 49 F.4th 1120, 1121–22 (7th Cir. 2022). The Seventh Circuit has instructed that, in determining whether relation back is appropriate, the court may ask only two questions: (1) "whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant" and (2) "whether, even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself." *Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 559–60 (7th Cir. 2011); *see Phillips v. City of Chi.*, 2021 WL 1614505, at *2 (N.D. Ill. Apr. 26, 2021).

On the first question, Sheehan should have known that Mr. Gonzalez would have sued him but for a mistake. Mr. Gonzalez's original complaint indicates he intended to sue all officers involved in escorting him from his cell to the holding cell. Mr. Gonzalez thought he had done so, mistakenly relying on the list of 13 "witnesses" in the ticket as comprehensive. An inmate disciplinary report that Defendants produced in discovery likewise reflects only 13 witnesses, excluding Sheehan. (Ex. A.) By contrast, Sheehan himself knew that he was involved in escorting Mr. Gonzalez on that day and was in the elevator with Mr. Gonzalez and several other officers. "[W]hy would [Mr. Gonzalez] *not* sue [Sheehan], but for a mistake?" *See Smith v. Zettergren*,

5

2021 WL 4502175, at *5 (N.D. Ill. Sept. 30, 2021) (denying newly added defendant's motion for summary judgment on statute of limitations and relation back). Notably, Defendants do not contend that Sheehan did not know or should not have known that Sheehan would have been a named defendant but for Mr. Gonzalez's inability to identify him as a participant in the incident.

Mr. Gonzalez should at least be permitted to conduct discovery on the question of what Sheehan knew or should have known. Courts in this District consistently hold that it is inappropriate to resolve this issue in a defendant's favor at the pleading stage. *E.g.*, *Clair v. Cook Cnty., Illinois*, 2017 WL 1355879, at *4 (N.D. Ill. Apr. 13, 2017) ("Because the complaint does not speak to what the newly added defendants knew or should have known about this lawsuit, the court cannot resolve the Rule 15(c)(1)(C)(ii) issue in their favor on a motion to dismiss."); *Klinger v. City of Chi.*, 2017 WL 736895, at *5 (N.D. Ill. Feb. 24, 2017) (same).[2]

The second question—whether the delay in plaintiff discovering his mistake impaired the new defendant's ability to defend himself—should also be resolved in Mr. Gonzalez's favor. Sheehan does not argue that he will face any prejudice in defending the claim on its merits, which should end the Court's inquiry. *E.g.*, *Phillips v. City of Chi.*, 2021 WL 1614505, at *4 (N.D. Ill. Apr. 26, 2021) ("Movants do not argue that they will face any prejudice."); *Clair v. Cook Cnty.*, 2017 WL 1355879, at *3 (N.D. Ill. Apr. 13, 2017) ("Defendants do not argue that the newly added defendants suffered prejudice by the delay within the meaning of Rule 15(c)(1)(C)(i), so only Rule 15(c)(1)(C)(ii) need be examined."); *Cheatham v. City of Chi.*, 2016 WL 6217091, at *3 (N.D. Ill. Oct. 25, 2016) (applying relation-back where officer did not argue that she was unaware of plaintiff's complaint within the prescribed time and did not argue she would be impaired from

---

[2] *See also Ryan v. City of Chi.*, 2016 WL 6582570, at *2 (N.D. Ill. Nov. 7, 2016) (same); *Karney v. City of Naperville*, 2016 WL 6082354, at *9 (N.D. Ill. Oct. 18, 2016) (same).

defending herself). Nor could he. To date, the parties have conducted only limited document discovery, have not conducted any depositions, and no pretrial or trial dates have been set.

Here again, Mr. Gonzalez is at least entitled to conduct discovery on the question of when Sheehan received notice of this lawsuit. *See Shuhaiber v. Dec*, 2020 WL 6781798, at *3 (N.D. Ill. Nov. 17, 2020) ("To answer the . . . question [of] whether Defendants had notice of the suit within 90 days . . . would require discovery and factual development that has not yet happened."); *see Smith*, 2021 WL 4502175, at *3–4 (explaining at summary judgment that this requirement can be satisfied if plaintiff can show that the newly added officer had a conversation with another officer about the lawsuit during the relevant time period).

Defendants' discussion of relation back in their motion does not directly address either of the two inquiries set forth in *Joseph*, instead arguing that the doctrine does not apply because the original complaint "make[s] no mention of Defendant Sheehan or his involvement on the date of the incident, much less his alleged failure to intervene." (Mot. at 5.) Mr. Gonzalez interprets this as an argument that his claim against Sheehan does not arise out of the same conduct, transaction, or occurrence described in the original complaint. *See* Fed. R. Civ. P. 15(c)(1)(B)–(C); *Herrera v. Cleveland*, 8 F.4th 493, 496 (7th Cir. 2021). This argument is plainly without merit. The original complaint alleged that, on May 7, 2020, 13 Defendant officers either assaulted Mr. Gonzalez in an elevator or looked on and failed to intervene. (ECF No. 6, Compl. ("Compl.") at 6–7.) Mr. Gonzalez's claim against Sheehan in the amended complaint is based on these very same facts; the only change is to add Sheehan as a defendant. (Am. Compl. ¶¶ 33–44.) Mr. Gonzalez's claim against Sheehan thus arises out of the same assault that is the subject of the original pleading. *See, e.g.*, *Williams v. City of Chi.*, 2017 WL 1545772, at *2 n.2 (N.D. Ill. Apr. 28, 2017); *Giles v. Newman*, 2012 WL 366957, at *3 (N.D. Ill. Feb. 2, 2012).

7

Thus, under Rule 15(c)(1)(C), Defendants' motion to dismiss Count II fails.[3]

### B. The Claim is Timely Under The Equitable Tolling Doctrine.

Although the Court needs no further reason to find that Count II is timely at this stage, Mr. Gonzalez's claim against Sheehan is also timely under the equitable tolling doctrine.

Equitable tolling "permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before." *Donald v. Cook Cty. Sheriff's Dept.*, 95 F.3d 548, 561 (7th Cir. 1996) (quotation omitted). For example, equitable tolling applies "when a plaintiff has been injured . . . yet ha[s] been unable despite all reasonable diligence to learn . . . the wrongdoer's identity." *Id.* (quotation omitted). Equitable tolling is also warranted "while the district court conducts a preliminary evaluation of the original *pro se* complaint"; "while the summons is being served by the U.S. Marshal's Office"; "while a motion for appointment of counsel is pending"; "when a plaintiff received inadequate notice that they . . . sued the wrong defendants"; and when a court leads a plaintiff "to believe that [he] ha[s] done everything that the pleading rules require[] of [him]." *White v. City of Chi.*, 2016 WL 4270152, at *21 (N.D. Ill. Aug. 15, 2016); *Jackson v. City of Chi.*, 2001 WL 987729, at *2 (N.D. Ill. Aug. 28, 2001). In determining whether equitable tolling applies, the court should consider the plaintiff's "particular background and circumstances," including lack of legal knowledge, lack of resources, and incarceration. *Brown v. Deleon*, 2013 WL 3812093, at *7 (N.D. Ill. July 18, 2013). The court

---

[3] Sheehan also puzzlingly argues that Mr. Gonzalez has "failed to serve the complaint and summons" on him 90 days after the complaint's filing. (Mot. at 5.) To the extent Sheehan is referencing the *original* complaint, Mr. Gonzalez did not serve Sheehan because Sheehan was not named as a defendant in the original complaint. With respect to the amended complaint, which was filed on August 25, 2023, Defendants' prior counsel accepted service on behalf of Sheehan (and the other newly added Defendants), as confirmed by email on September 7, 2023. In any event, Rule 15(c)(1)(C) concerns "notice," not service.

must also consider "the possibility of prejudice to the defendant[] occasioned by the delay." *Donald*, 95 F.3d at 562.

Mr. Gonzalez demonstrated reasonable diligence in prosecuting his claims. For the duration of the events at issue in this case, Mr. Gonzalez's face was pressed against the wall (first, next to his cell and, later, in the elevator) or pushed toward the ground, preventing him from seeing or otherwise identifying the officers involved. Shortly after the May 7, 2020 assault, Mr. Gonzalez received a ticket listing 13 officers as "witnesses," which Mr. Gonzalez understood to be a comprehensive list of those involved; Sheehan was not listed. Mr. Gonzalez named the 13 officers in his grievance and, later, as defendants in his original complaint. Once discovery was underway, Mr. Gonzalez requested the video footage that shows Sheehan's involvement and was told he could view it at his deposition, which gave him the impression he did not have to take any additional steps to access it. Based on the above, the statute of limitations was tolled from at least November 10, 2021, the day Mr. Gonzalez's *pro se* complaint was signed,[4] to April 27, 2022, when 12 of the 13 original Defendants filed their answer,[5] and then from at least mid-August 2022, when Mr. Gonzalez served his discovery requests, to the end of July 2023,[6] when Defendants produced the video footage that showed Sheehan's involvement. *See White*, 2016 WL 4270152, at *21 (holding that equitable tolling applied during the time the Section 1983 plaintiff waiting for the defendants to produce plaintiff's police records, despite promises to do so); *Stewart v. Special Adm'r of Estate*

---

[4] *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (the filing date for *pro se* persons in custody is "the time petitioner delivered it to the prison authorities for forwarding the court clerk"); *White*, 2016 WL 4270152, at *21 n.35.
[5] Defendant Rodriguez filed his answer on May 20, 2022. (ECF No. 29.)
[6] During this period, Mr. Gonzalez filed a motion for appointment of counsel, which provides another basis for equitable tolling. *See Donald*, 95 F.3d at 562.

9

*of Mesrobian*, 559 F. App'x 543, 547 (7th Cir. 2014) ("[T]he delay . . . was outside of Stewart's control and constituted good cause to extend the time for notice.").

At that time, Mr. Gonzalez's appointed pro bono counsel conducted prompt review of the footage and, less than a month later, on August 18, 2023, filed a motion for leave to file an amended complaint. Under these circumstances, and where, as discussed above, Sheehan does not contend that he has been prejudiced in any way, the Court should find that equitable tolling applies and the claim against Sheehan is timely. *See Craig v. Dralle*, 2018 WL 4699752, at *9 (N.D. Ill. Sept. 30, 2018) (holding that equitable tolling applied where plaintiff did not know defendants' names until after appointed counsel conducted discovery despite some effort to learn their names on his own); *Garcia v. Ill. Dep't of Children & Fam. Servs.*, 2006 WL 2632919, at *14 (N.D. Ill. Sept. 11, 2006) (finding that equitable tolling applied where plaintiff first learned during discovery that newly added defendant was responsible for decision to terminate her); *Jackson*, 2001 WL 987729, at *2–3 (holding that equitable tolling applied where *pro se* plaintiff "labor[ed] under [a] misapprehension" about identity of correct defendant and where City's "less-than-diligent efforts in responding to discovery prevented [the plaintiff] from timely learning [the correct defendant's] identity," even though plaintiff "could have been more vigilant" in pursuing discovery).

In sum, the Court should find that Mr. Gonzalez's claim against Sheehan is timely or, at a minimum, permit Mr. Gonzalez to conduct discovery on this issue.

## II.     Mr. Gonzalez's *Monell* Claim Is Timely.

Defendants next move to dismiss Mr. Gonzalez's *Monell* claim against Sheriff Dart and Cook County (Count III) as untimely under the statute of limitations. But the *Monell* claim relates back to the date of the original complaint under Rule 15(c)(1)(C) for similar reasons as the claim against Sheehan. Defendants' motion to dismiss Count III thus equally fails.

10

As noted, there are two essential inquiries under the relation back doctrine: (1) "whether the defendant who is sought to be added by the amendment knew or should have known that the plaintiff, had it not been for a mistake, would have sued him instead or in addition to suing the named defendant" and (2) "whether, even if so, the delay in the plaintiff's discovering his mistake impaired the new defendant's ability to defend himself." *Joseph*, 638 F.3d at 559–60. The motion to dismiss makes no argument that the *Monell* Defendants would be prejudiced by Mr. Gonzalez's delay in asserting a *Monell* claim. (*See* Mot. at 5–6.) Because that failure ends the inquiry on the second prong, relation back turns on the first prong.[7]

Anticipating relation back, Defendants assert that "the original pleading did not put Sheriff Dart on notice of this newly added policy claim." (Mot. at 6.) But Defendants fail to offer *any* facts or legal authority to support this conclusion. Defendants do not even assert that Sheriff Dart *should not* have been on notice of a *Monell* claim. The risks of constitutional violations associated with the absence of a security camera in the elevator in Division 9 is a well-documented phenomenon under Sheriff Dart, as alleged in the Amended Complaint (Am. Compl. ¶¶ 52–53), and the original complaint emphasized that there are no cameras in the elevator where his assault occurred (Compl. at 6.) It is thus readily conceivable that Sheriff Dart knew or should have known that Mr. Gonzalez would have brought a *Monell* claim but for the absence of legal counsel.

---

[7] Defendants also do not argue that the *Monell* claim does not "aris[e] out of the same conduct, transaction, or occurrence as the original complaint." *See Herrera*, 8 F.4th at 496 (quotations omitted); *see also* Mot. at 5–6. And again, nor could they. Just like the Sheehan claim, the *Monell* claim arises out of the same assault alleged in the original complaint. (*Compare* Am. Compl. ¶¶ 23–50, *with* Compl. at 6–7.) While the *Monell* claim also relies on new allegations relating to previous alleged instances where detainees were assaulted in the same elevator (*see* Am. Compl. ¶¶ 52–53), those allegations are immaterial to the relation back inquiry, as courts in this District have repeatedly held. *E.g.*, *Treadwell v. Salgado*, 2021 WL 3129290, at *5 (N.D. Ill. July 23, 2021); *Hernandez v. City of Chi.*, 2016 WL 6948386, at *1 (N.D. Ill. Nov. 28, 2016); *Armour v. Country Club Hills*, 2014 WL 63850, at *6 (N.D. Ill. Jan. 8, 2014).

At a minimum, Mr. Gonzalez has not alleged that Sheriff Dart was *not* and should *not* have been on notice of a *Monell* claim, which is sufficient to deny Defendants' motion to dismiss Count III as untimely. As discussed above, dismissal based on the statute of limitations under Rule 12(b)(6) is appropriate only where the complaint affirmatively establishes "all of the necessary elements." *White v. City of Chi.*, 2014 WL 958714, at *2 (N.D. Ill. Mar. 12, 2014). Courts in this District thus consistently hold that it is inappropriate to resolve this issue in a defendant's favor at the pleading stage, as discussed above. *E.g.*, Clair, 2017 WL 1355879, at *4 ("Because the complaint does not speak to what the newly added defendants knew or should have known about this lawsuit, the court cannot resolve the Rule 15(c)(1)(C)(ii) issue in their favor on a motion to dismiss."); *see also supra* pp. 5–7. The same is equally true of *Monell* claims. *See, e.g.*, *Brewer v. City of Chi.*, 2018 WL 3463281, at *6 (N.D. Ill. July 18, 2018); *White*, 2014 WL 958714, at *2. Again, Defendants cite no authority to the contrary.

Accordingly, it is at best premature to decide whether Sheriff Dart had sufficient notice of the *Monell* claim for it to relate back to under Rule 15(c)(1)(C). Defendants' motion to dismiss Count III as untimely should therefore be denied.

**III.    Mr. Gonzalez's *Monell* Claim Is Adequately Alleged.**

Finally, Defendants move to dismiss Count III for failure to adequately allege a *Monell* claim under Rule 12(b)(6). This bid fails to defeat Mr. Gonzalez's *Monell* claim as well.

"To state a *Monell* claim, a plaintiff must allege that his or her constitutional injury was caused by: "(1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well-settled that it constitutes a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final policy-making authority caused a constitutional injury." *Hutton*

12

*v. City of Chi.*, 2021 WL 809731, at *2 (N.D. Ill. Mar. 3, 2021) (quoting *Rossi v. City of Chi.*, 790 F.3d 729, 737 (7th Cir. 2015)). Mr. Gonzalez relies on the second approach, as indicated in his motion for leave to amend the complaint. (ECF No. 82 at 7–8; *see also* Am. Compl. ¶¶ 75–77.)

There are no "bright-line rules defining a 'widespread custom or practice,'" except that it requires more than one instance, and often more than two or three. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). As explained in Mr. Gonzalez's motion for leave to file, he has alleged at least *five* cases involving allegations that pretrial detainees were assaulted by correctional officers in elevators at Cook County Jail that lack security cameras, including in Division 9, under Sheriff Dart's tenure. (ECF No. 82 at 7–8; *see also* Am. Compl. ¶¶ 38, 52.) Defendants assert that one of those cases, *Jackson*, is distinct because the complaint did not involve allegations relating to a similar incident. But Defendants' myopic focus on the complaint overlooks that the plaintiff alleged a similar incident in his statement of facts, as indicated by the district court's summary judgment decision. *See Jackson v. Stubenvolt*, 2022 WL 991950, at *2 (N.D. Ill. Mar. 31, 2022). Defendants also attempt to undermine *Hudson* on the ground that the incident alleged there involved a camera-less elevator in Division 10, not Division 9. But *Hudson* nonetheless supports Mr. Gonzalez's alleged widespread practice of "assaulting detainees in elevators lacking security cameras," as Defendants themselves put it. (*See* Mot. at 7.) Defendants concede that the other two cases cited in the amended complaint are supportive. (*See id.* at 9.) As a result, Defendants fail to undermine any of the other four cases cited in the Amended Complaint.

Defendants also ignore that Mr. Gonzalez has alleged statements by other detainees to the effect that such assaults happened all the time. (Am. Compl. ¶¶ 52(a), 52(c), 52(e), 53.) One detainee described being assaulted in elevators without cameras as "a regular practice." (*Id.* ¶ 52(e).) Another said that "a lot of guys get physically assaulted in the elevator" in Division 9

13

without a camera. (*Id.* ¶ 53.) In one case, an officer himself implied that such assaults in elevators happen all the time, telling a detainee: "be cool, it's a camera on this one." (*Id.* ¶ 52(a).) Given these allegations, it is more than reasonable to infer that the alleged widespread practice of assaulting detainees in elevators without security cameras, and especially the elevator in Division 9, has not been an isolated incident, but rather has occurred systematically over the years, and far more times than in the five cases Mr. Gonzalez has identified (without any discovery).

These allegations readily withstand a motion to dismiss the *Monell* claim, as explained in Mr. Gonzalez's motion for leave to file. In *Crossley v. Dart*, for instance, the court denied a motion to dismiss a *Monell* claim involving the same practices of "using elevator spaces," including the Division 9 elevator, "to beat inmates," and of failing to train officers to avoid such misconduct, concluding that the single instance involving the plaintiff, together with the presence of a "recurring, obvious risk," "more than suffice[d] to raise inferences of a widespread custom or practice." 2022 WL 444115, at *3 (N.D. Ill. Feb. 14, 2022) (quotation omitted). Given Mr. Gonzalez's much stronger allegations regarding the prevalence of such unrecorded "elevator rides," his *Monell* claim suffices all the more. Despite Mr. Gonzalez's motion for leave to file, however, Defendants fail to distinguish or even cite *Crossley*. Nor do Defendants cite any other case law to support their conclusory assertion that Mr. Gonzalez has not alleged sufficient facts to create a plausible inference of a widespread practice of assaulting detainees in elevators without security cameras. (*See* Mot. at 8–9.)

Defendants also fail to undermine the adequacy of the alleged a widespread practices of failing to adequately train and supervise officers with respect to the appropriate use of force, including when transporting detainees in elevators without security cameras, and failing to investigate or discipline officers who reportedly beat detainees in elevators without security

14

cameras. (*See* Am. Compl. ¶¶ 75(c)–(d).) As Defendants' own case law demonstrates, alleging a *Monell* claim in the failure to train context requires a plaintiff to allege only "a pattern of similar constitutional violations by untrained employees," which suffices to "establish[] that the policymakers knew or should have known that their employees' training was deficient." *Winchester v. Marketti*, 2012 WL 2076375, at *4 (N.D. Ill. June 8, 2012). Given Mr. Gonzalez's allegations demonstrating that the alleged practice of assaulting detainees in elevators without cameras has occurred at least five times, and supporting a reasonable inference that it has occurred countless additional times, under Sheriff Dart, Mr. Gonzalez has alleged an adequate pattern of similar constitutional violations to support a failure to train claim. *See supra* pp. 12–14. For the same reasons, it is also reasonable to infer that the relevant policymakers failed to investigate and discipline officers responsible for these assaults, allowing them to perpetuate. Defendants' perfunctory argument that Mr. Gonzalez has not sufficiently alleged a widespread failure to investigate and discipline officers does not purport to show otherwise. (*See* Mot. at 11.)

## CONCLUSION

Mr. Gonzalez respectfully requests that the Court deny Defendants' motion to dismiss.

Dated: February 16, 2024  Respectfully submitted,

By: /s/ *Andrew W. Vail*
Andrew W. Vail
Kaitlin M. Leskovac
Jacob P. Wentzel
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
(312) 840-8688
AVail@jenner.com
KLeskovac@jenner.com
JWentzel@jenner.com

*Appointed pro bono counsel for Plaintiff*

15