IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **CHRISTIAN A. GONZALEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | No. 21-cv-06243 |
| | ) | |
| v. | ) | Judge Jeffrey I. Cummings |
| | ) | |
| **JUSTO RODRIGUEZ #17897, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christian A. Gonzalez, a pretrial detainee at the Cook County Jail, brings this action pursuant to 42 U.S.C. §1983 against thirteen Cook County correctional officers, Sergeant Sheehan, Sheriff Thomas Dart, and Cook County for claims arising out of an incident on May 7, 2020, during which plaintiff was attacked in a Division 9 elevator containing no security camera. In his amended complaint, (Dckt. #84), plaintiff brings claims for: excessive force against the three officers that allegedly assaulted him in the elevator (Count I); failure to intervene against the remaining officers and Sergeant Sheehan (Count II); and a *Monell* claim against Sheriff Dart and Cook County alleging a widespread practice at Cook County Jail of officers beating detainees in elevators without security cameras (Count III).

Defendants have filed a motion to dismiss, (Dckt. #110), asking the Court to dismiss plaintiff's claim for failure to intervene against defendant Sheehan and his *Monell* claim as time-barred by the applicable two-year statute of limitations. Alternatively, defendants argue that plaintiff has otherwise failed to state a *Monell* claim. For the reasons set forth below, defendants' motion to dismiss, (Dckt. #110), is denied.

I.  **LEGAL STANDARD**

!     A party may move to dismiss a claim pursuant to Rule 12(b)(6) it if fails "to state a claim upon which relief may be granted," and such a motion tests the legal sufficiency of the complaint and not the merits of the case.  *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 887 (7th Cir. 2012).  To survive a Rule 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Hess v. Garcia*, 72 F.4th 753, 758 (7th Cir. 2023) (cleaned up).  On the other hand, it is well-settled that "a plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses."  *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016).  Because "affirmative defenses frequently turn on facts not before the court at [the pleading] stage, . . . dismissal is appropriate *only* when the factual allegations in the complaint unambiguously establish all the elements of the defense."  *Id.* (cleaned up).  Finally, the Court construes "the complaint in the light most favorable to the [non-moving party] accepting as true all well-pleaded facts and drawing reasonable inferences in the [non-moving party's] favor."  *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

II.  **BACKGROUND**

The following facts are taken from plaintiff's amended complaint, (Dckt. #84):

On May 7, 2020, plaintiff was a pre-trial detainee in Cook County Jail and housed in Tier 1F of Division 9.  (*Id.* ¶1).  Around 10:22 a.m. that day, defendant officer Sacuta entered plaintiff's cell purportedly for the purpose of distributing Covid-19 masks, soap, and a lunch tray, while four other officers stood outside the cell.  (*Id.* ¶24).  According to plaintiff, however, Sacuta entered the cell to seek retaliation for an incident two days earlier during which plaintiff allegedly struck another officer.  (*Id.* ¶25).

2

After Sacuta entered plaintiff's cell, an altercation ensued, and several of the officers who had been standing outside of the cell entered the cell. (*Id*. ¶26). In addition, approximately ten other officers came rushing toward plaintiff's cell. (*Id*.). Ultimately, plaintiff was pulled out of his cell with his wrists cuffed behind his back and his legs shackled. (*Id*. ¶27). Approximately four other officers pushed plaintiff's face against the wall next to his cell and conducted a search. (*Id*.). Body-worn camera footage shows that there was no blood on plaintiff's face at that time or left on the wall against which the officers pressed his face. (*Id*. ¶¶27-28).

Defendant Officers Rodriguez, Rasic, and Duharkic then escorted plaintiff out of Tier 1F and to the dispensary. (*Id*. ¶29). Plaintiff was escorted walking backwards, bent over at the waist at an almost 90-degree angle, with one officer holding his head down by placing a hand on the back of his neck. (*Id*.). The body-worn camera footage does not show blood dripping off plaintiff's face as the officers escorted him out of Tier 1F. (*Id*. ¶30).

Defendant officers Rodriguez, Rasic, and Duharkic continued to escort plaintiff in the same position down a hallway toward the elevator in Division 9. (*Id*. ¶31). Defendant Sergeant Sheehan walked with them, his body-worn camera activated, and called the elevator when they arrived at the elevator bank. (*Id*.). When the elevator arrived, defendant officers Rodriguez, Rasic, and Duharkic escorted Gonzalez into the elevator and led him to the back right-hand corner. (*Id*. ¶33). Defendant officer Chavez also entered the elevator. (*Id*.). According to plaintiff, "there was (and still is) no security camera installed in the elevator in Division 9," a fact of which the defendant officers were aware. (*Id*. ¶32, 35).

Once plaintiff and the four officers were in the elevator, Sergeant Sheehan turned to walk away toward a room across from the elevator where other defendant officers were stationed. (*Id*. ¶¶34, 37). Sergeant Sheehan was away from the elevator for approximately thirty

3

seconds. (*Id*. ¶37). During that time, "and with no camera in sight," defendant officers Rodriguez, Rasic, and Duharkic brutally attacked plaintiff, "including by kneeing and punching him in the face and head repeatedly, causing him to bleed uncontrollably." (*Id*. ¶38). Defendant Chavez remained in the elevator while the other officers attacked plaintiff, but did not intervene to stop the attack. (*Id*. ¶40).

Sergeant Sheehan then rushed back and entered the elevator. (*Id*. ¶41). By that time, defendants Rodriguez, Rasic, and Duharkic had surrounded plaintiff and pushed him up against the corner of the elevator with his hands restrained behind his back. (*Id*.). After Sergeant Sheehan entered the elevator, the door closed and the elevator either ascended or descended to a different floor. (*Id*. ¶42). When the elevator door opened, defendants Rodriguez, Rasic, and Duharkic escorted plaintiff off the elevator still facing down. (*Id*. ¶43). As plaintiff exited the elevator, Sergeant Sheehan's body-worn camera footage shows blood on the left side of plaintiff's uniform and blood streaked in the corner of the elevator where plaintiff had been standing. (*Id*.).

After being escorted off the elevator, plaintiff was taken to a holding area known as the bull pen. (*Id*. ¶44). Footage from the holding area shows that plaintiff's face and uniform were covered in blood. (*Id*.). Twenty minutes later, plaintiff was taken to the dispensary and medical staff immediately called 911. (*Id*. ¶45). Plaintiff was bleeding from his mouth and nose, had significant facial swelling, his right eye was swollen shut, he had multiple lacerations to his right eyebrow area, and an injury to his nose. (*Id*.). Plaintiff was transported to Mount Sinai Hospital where he was treated for acute blunt head and facial trauma. (*Id*. ¶¶46-47). This action followed.

4

Plaintiff filed his initial pro se complaint in November 2021. (Dckt. #6). In it, plaintiff described the May 7, 2020 incident in the elevator and asserted a claim for excessive force and failure to intervene. (*Id.* at 6-7). Plaintiff named the thirteen defendant officers, but did not assert claims against Sergeant Sheehan, Sheriff Dart, or Cook County, nor did he assert a *Monell* claim. (*Id.*).

Ultimately, the Court appointed plaintiff counsel, (Dckt. #62), and granted plaintiff leave to file his amended complaint. (Dckt. #83). Plaintiff's amended complaint – filed by his newly appointed counsel on August 21, 2023 – added additional factual allegations and screenshots from the body-worn camera footage, and added defendants Sergeant Sheehan, Sheriff Dart, and Cook County. Again, plaintiff's amended complaint includes claims for excessive force against the three officers with him in the elevator (Count I), failure to intervene as to the remaining officers and Sergeant Sheehan (Count II), and a *Monell* claim against Sheriff Dart and Cook County (Count III) alleging a widespread practice at Cook County Jail of officers bearing detainees in the Division 9 elevator where plaintiff was assaulted and "others that lack security cameras." (Dckt. #84 ¶74).

### III.  ANALYSIS

Defendants now seek to dismiss plaintiff's failure to intervene claim against Sergeant Sheehan and his *Monell* claim against Sheriff Dart and Cook County, arguing that these claims are barred under the applicable two-year statute of limitations. Alternatively, defendants argue that plaintiff has failed to properly state a *Monell* claim.[1] Plaintiff responds that the Court should

---

[1] Defendants also initially argued that plaintiff failed to serve the complaint and summons on defendant Sheehan within 90 days after filing the complaint as required by Rule 4(m). However, plaintiff responded – and defendants did not dispute in their reply – that defendants' "prior counsel accepted service on behalf of Sheehan (and the other newly added defendants), as confirmed by email on September 7, 2023," which was well within the 90-day window for service. (Dckt. #114 at 9, n.3).

5

not resolve the statute of limitations affirmative defense at the motion to dismiss stage; that his claims are otherwise timely under the relation back and equitable tolling doctrines; and that he has properly pled a *Monell* claim.

      **A.    Defendants' Statute of Limitations Arguments Cannot Be Decided at the Motion to Dismiss Stage.**

Defendants first assert that plaintiff's failure to intervene claim against Sergeant Sheehan and his *Monell* claim should be dismissed because plaintiff failed to bring these claims within the applicable two-year statute of limitations period. *See Walker v. City of Chicago*, 559 F.Supp.3d 747, 750 (N.D.Ill. 2021) ("In Illinois, the statute of limitations for §1983 claims is two years [and] [e]xcessive force claims accrue upon application of the force."); *Jones v. Burge*, 2012 WL 2192272, at *8 (N.D.Ill. June 13, 2012) ("Because *Monell* policy claims fall under the scope of Section 1983, they are also subject to the two-year statute of limitations in Illinois."). In response, plaintiff does not dispute that over two years has passed between the May 7, 2020 elevator assault incident and the filing of his amended complaint on August 21, 2023, in which he first named Sergeant Sheehan and asserted a *Monell* claim. Instead, plaintiff argues that defendants' arguments are premature at the pleading stage and that these claims are otherwise timely under both the relation back doctrine set forth in Rule 15 and the doctrine of equitable tolling.[2]

---

[2] Under Rule 15(c)(1), an amendment adding a party to the complaint after the statute of limitations has run relates back to the timely filed complaint so long as:

    (1)    the amendment asserts a claim or defense arising out of the same conduct, transaction, or occurrence as the original complaint;

    (2)    within the period provided by Rule 4(m), the party added by amendment received such notice of the action that it will not be prejudiced in defending on the merits; and

    (3)    the added party knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

6

The statute of limitations is an affirmative defense and a "plaintiff ordinarily need not anticipate and attempt to plead around affirmative defenses." *Hyson USA, Inc.*, 821 F.3d at 939 (cleaned up). Moreover, the Seventh Circuit and other courts of appeals have held that district courts should usually refrain from granting Rule 12(b)(6) motions on affirmative defenses, particularly where – as here – equitable tolling is implicated. *See, e.g.*, *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004) (stating that tolling should not be decided on a motion to dismiss because generally more evidence is required); *Clark v. Hanley*, 89 F.4th 78, 94–95 (2d Cir. 2023) ("equitable tolling often raises fact-specific issues premature for resolution on a Rule 12(b)(6)" motion); *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 301–02 (3d Cir. 2010) ("[O]ur Court (and our sister circuit courts) have reasoned that, because the question whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings, such tolling is not generally amenable to resolution on a Rule 12(b)(6) motion."); *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1003–04 (9th Cir. 2006) ("Generally, the applicability of equitable tolling depends on matters outside the pleadings, so it is rarely appropriate to grant a Rule 12(b)(6) motion to dismiss (where review is limited to the complaint) if equitable tolling is at issue.").

An "exception to this rule applies where the allegations of the complaint . . . set forth everything necessary to satisfy the affirmative defense." *Walker v. City of Chicago*, 596 F.Supp.3d 1064, 1070 (N.D.Ill. 2022) (cleaned up). But, having reviewed the amended

---

*Herrera v. Cleveland*, 8 F.4th 493, 496 (7th Cir. 2021) (cleaned up). As for the doctrine of equitable tolling, it "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Hentosh v. Herman M. Finch Univ. of Health Sciences*, 167 F.3d 1170, 1174 (7th Cir.1999). "A litigant is entitled to equitable tolling if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Lee v. Cook Cnty., Ill.*, 635 F.3d 969, 972 (7th Cir. 2011) (cleaned up).

complaint here, the Court concludes this is not such a case. Indeed, plaintiff has not affirmatively alleged that he "failed to file suit within the statute of limitations or that equitable tolling . . . or relation back principles are inapplicable." *White v. City of Chicago*, No. 11 C 7802, 2014 WL 958714, at *2 (N.D.Ill. Mar. 12, 2014) (denying motion to dismiss based on statute of limitations where plaintiff has not "pleaded himself out of court"). Instead, whether plaintiff will be able to rebut the statute of limitations defense under the doctrines of relation back or equitable tolling will require the analysis of evidence that is beyond the pleadings and thus cannot be considered at this procedural juncture. Given this, no decision as to the applicability of relation back or equitable tolling can be made until this evidence is properly before the Court.[3] *See Reiser*, 380 F.3d at 1030 ("It is best to await a final decision rather than leap into a subject that evidence may cast in a new light."). Thus, although it remains to be seen if plaintiff's claim against Sergeant Sheehan and his *Monell* claim can ultimately withstand defendants' statute of limitations defense, the resolution of this issue must wait for summary judgment or trial.

For these reasons, the Court denies defendants' motion to dismiss plaintiff's failure to intervene claim against Sergeant Sheehan and his *Monell* claim based on defendants' statute of limitations defense.

### B. Plaintiff Has Properly Pled His *Monell* Claim.

Next, defendants argue that plaintiff has failed to properly plead a *Monell* claim against Sheriff Dart and Cook County. Pursuant to the Supreme Court's ruling in *Monell v. Dep't of Soc. Servs. of City of New York*, a plaintiff can hold municipalities liable under §1983 "when execution of a government's policy or custom . . . inflicts the injury that the government as an

---

[3] The Court acknowledges that discovery in this matter has been ongoing since the parties' briefed this issue and is nearing its end. The Court thus presumes that the parties have conducted the necessary discovery on this issue, excluding the discovery at issue in plaintiff's pending motion to compel.

entity is responsible for under §1983." 436 U.S. 658, 694 (1978). Plaintiff can demonstrate the existence of a government policy or custom in one of three ways: "(1) an express policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by an agent with final policymaking authority." *Gonzalez v. McHenry Cnty., Ill.*, 40 F.4th 824, 829 (7th Cir. 2022). Here, plaintiff purports to proceed under the second method, alleging that there is a widespread practice at Cook County Jail of officers using elevators that lack security cameras to beat detainees. Plaintiff alleges further that the practice has "flourished due to defendant Dart's failure to adequately train and supervise officers with respect to the appropriate use of force, including inside of the elevators at Cook County Jail" and that defendants have otherwise failed to properly investigate or discipline officers who beat detainees in elevators. (Dckt. #84 ¶¶55, 75).

To prevail on his widespread practices claim, plaintiff must show that defendants engaged in a practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). "While there is no bright-line test on what amount of evidence is required to sufficiently plead [a] widespread practices claim, plaintiffs must come forward with more evidence than a single incident, or even three." *Washington v. City of Chicago*, No. 24 C 12842, 2025 WL 1262569, at *2 (N.D.Ill. May 1, 2025) (cleaned up) (citing *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) and *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002)). "That said, the number of incidents a plaintiff pleads is not the ultimate guidepost. The key to parsing many of these claims is to differentiate between 'isolated wrongdoing of one or a few rogue employees and other, more widespread practices.'" *Washington*, 2025 WL 1262569, at *2, *quoting Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021); *see also Hamilton v. Oswego*

9

*Cmty. Unit Sch. Dist. 308*, No. 20 C 0292, 2021 WL 767619, at *11 (N.D.Ill. Feb. 26, 2021) ("The existence of another lawsuit is not enough to state a claim that a defendant maintains a widespread practice."). To properly state his *Monell* claim regarding elevator beatings then, plaintiff must set forth facts that "permit the reasonable inference that [a] practice is so widespread so as to constitute a governmental custom." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017).

Here, beyond just his own experience, plaintiff includes the following allegations to support his *Monell* claim of a widespread practice of officer beatings in elevators at Cook County Jail where there are no cameras:

> 52. In recent years, Defendants Dart and Cook County have litigated and/or settled numerous lawsuits alleging that Cook County Jail officers assaulted detainees in elevators lacking security cameras, including the elevator where Mr. Gonzalez was assaulted. For example:
>
> a. In *Crossley v. Dart*, No. 19-cv-8263 (N.D. Ill. filed Dec. 17, 2019), a Cook County Jail detainee alleged that officers took him and two other detainees into Division 9 segregation custody via elevator and, while in the elevator, the officers beat the plaintiff and other detainees in the head and midsection. The plaintiff was then led to another elevator where an officer said: "be cool, it's a camera on this one."
>
> b. In *Jackson v. Stubenvoll*, No. 16-cv-05746 (N.D. Ill. filed May 31, 2016), a pretrial detainee at Cook County Jail alleged that an officer pushed him in an elevator in Division 9 and that the officer knew there was no camera in the elevator.
>
> c. In *Hudson v. Preckwinkle*, No. 13-cv-8752 (N.D. Ill. filed Dec. 6, 2013), *an expert witness testified that the term "elevator ride" is a term used at Cook County Jail to "describe a beating by correctional officers where there are no cameras." The expert further testified that his review of video footage at Cook County Jail led him to conclude that "elevator rides" were occurring at Cook County Jail. Regarding the elevator in Division 9, the former Unit Director for the Office of Professional Review at the Sheriff's Office testified: "There are no video cameras inside the elevator. We know that. Everybody else knows that." A Cook County Jail detainee testified: "[The elevator is] where they [the officers] do all their beating up at. . . . They take you to the elevator, where there are no cameras at."*

10

    d.    In *Hudson*, the plaintiff alleged: "Officer 'D. Roach' beat [a detainee] during an 'elevator ride" after the two men had a verbal altercation. During that altercation, the officer threatened [the detainee] with an 'elevator ride.' A few hours later, Officer D. Roach and another officer came to [the detainee's] cell and forced him into the elevator. While in the elevator, the officers beat [the detainee], causing him a black eye, bruises, and swelling on his head."

    e.    In *Adkisson v. Dart*, No. 09-cv-4660 (N.D. Ill. filed Aug. 11, 2009), a pretrial detainee alleged that, after processing at Division 9, an officer escorted him in an elevator that did not have a camera and slapped him in the head. The detainee alleged that "when correctional officers wish to illegally punish and harm detainees they will escort those detainees through a special route which does not include video cameras and that this is a regular practice."

53.    *The absence of a security camera in the elevator where Mr. Gonzalez was assaulted, and the practice of officers using that elevator to assault detainees, has also been documented in the media. For instance, a detainee explained in a 2019 article that "a lot of guys get physically assaulted in the elevator. There's cameras everywhere except the elevator in Division 9."*

(Dckt. #84 ¶¶52-53) (emphasis added). Plaintiff further alleges that defendant Dart is aware of the absence of security cameras in certain elevators, as well as the practice of officers beating detainees in those elevators, but has not taken any steps to install cameras, or properly train, investigate, or discipline officers engaging in this conduct, thus allowing the practice to flourish. (*Id*. ¶¶54-54, 75).

At the pleading stage, all of these allegations – which go beyond plaintiff's own experience and solely listing other similar lawsuits – "permits a reasonable inference" that the alleged practice of officers beating detainees in elevators without cameras, and the improper training, investigation, and discipline related thereto, "is so widespread so as to constitute a governmental custom." *Gill,* 850 F.3d at 344; *see also Crossley v. Dart,* No. 19-CV-8263, 2022 WL 444115, at *2 (N.D.Ill. Feb. 14, 2022) (denying motion to dismiss *Monell* claim related to elevator beatings at Cook County Jail where plaintiff pled only that Dart "failed to ensure that CCDOC officers received proper training regarding the use of force, resulting in Plaintiff's brutal

beating;" "knew about ongoing officer misconduct at the CCDOC for decades;" "failed to respond to repeated instances of elevator beatings;" and "that the practice of using elevator spaces to beat inmates is well-known and continuous."). Accordingly, defendants' motion to dismiss plaintiff's *Monell* claim as insufficiently pled is denied.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss, (Dckt. #110), is denied. Defendants shall answer by May 21, 2025.

**Date: May 13, 2025**

**Jeffrey I. Cummings**
**United States District Court Judge**