IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTIAN A. GONZALEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | Case No. 21-cv-6243 |
| | ) | |
| JUSTO RODRIGUEZ et al., | ) | Judge Jeffrey I. Cummings |
| | ) | Magistrate Judge Maria Valdez |
| Defendants. | ) | |
| | ) | |

**DEFENDANT SHERIFF DART'S SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF ITS RESPONSE TO PLAINTIFF'S MOTION TO
COMPEL PRODUCTION OR INSPECTION OF GRIEVANCES**

Defendant, THOMAS J. DART, in his official capacity as Sheriff of Cook County, by his attorney, EILEEN O'NEILL BURKE, State's Attorney of Cook County, through her Special Assistant State's Attorneys, JOHNSON & BELL, LTD., submits the following supplemental memorandum in accordance with the Court's May 15, 2025, Order, ECF No. 174:

1. **The name of the other "case" from which the above yearly estimated grievance totals came.**

   *Henneberg v. Dart*, 19-cv-7380 (N.D. Ill.).

2. **How and for how long OPR maintains the electronic repository of forwarded grievances alleging physical conduct against a detainee and, if available, the estimated yearly total of such grievances from 2018 through 2020.**

   The Office of Professional Review (OPR) does not maintain a separate, electronic repository of forwarded grievances alleging physical conduct against a detainee. OPR does maintain investigative files concerning employee misconduct, and while OPR has such files going back to 2008, most of these files are not in an electronic format. For the time period 2018 to 2020, only the investigative files from 2020 are stored electronically.

   Based on historical data maintained by OPR, the estimated yearly total of investigative files (both paper and electronic), where such investigations were initiated by detainee grievances that allege officer misconduct are as follows:

1

- 2018 – 415
- 2019 – 362
- 2020 – 397

Grievances may also be sent to OPR as an attachment to an email. The retention of these grievances are governed by the electronic retention policies of the Cook County Sheriff's Office (CCSO). Emails on the exchange server can be searched going back to 2018 (or earlier). All 2018 to 2020 emails have been maintained under current policies and practices.

CCSO can search emails, but a list of potential senders and/or recipients would need to be compiled, and even the best search terms would not allow a targeted search for grievances complaining of officer physical misconduct. Using the right keywords and search terms, it may be possible to locate grievances forwarded to OPR, but a comprehensive collection could not be guaranteed given the limitations of keyword and custodian searches (for example, if the sender uses a different keyword or sends the email to a different custodian).

3. **Defendants' argument, if any, as to why searching OPR's repository of responsive grievances would be unduly burdensome.**

As noted above, OPR does not maintain a separate, electronic repository of forwarded grievances. Grievances are contained either within investigative files or as attachments to emails.

A search of OPR's investigative files would first require a predominately manual review of over 1,000 investigative files, based on the numbers provided above, to retrieve the grievances within the files. Files from 2018 and 2019 are not electronically stored, so the review of those files would require pulling the physical files and conducting a paper review. Next, it would be necessary to identify files concerning allegations of physical misconduct as opposed to those in which the allegation was one of non-physical misconduct.

Searching emails sent to OPR would be burdensome because the allegations in the grievances are handwritten by detainees, and therefore, the grievances are not searchable by keywords. Determining whether a grievance sent to OPR alleges officer physical misconduct (as opposed to other types of allegations made by detainees) would require a manual review of each handwritten grievance. Also, the review process is further burdened because handwritten grievances could be illegible, perfectly legible, or anywhere in between. Grievances could be a single sentence, multiple pages, or anywhere in between.

As an estimate, assuming it took five minutes to review each grievance to determine whether it alleges physical conduct against a detainee, it would take 5,870 minutes, or close to 100 hours to review all 1,174 grievances from 2018 to 2020 that are identified in Paragraph 2 (based on historical data). Such a time-intensive review process would place an undue burden on Defendants. This estimate also does not include the time it would take to search OPR investigative files for grievances, or to review unresponsive emails that result from the search.

4. **Defendants' objection, if any, to plaintiff's request in his reply that defendants' production should be expanded to include the entirety of the OPR files related to any responsive grievances.**

   First, as described in Paragraph 3, it would take a significant amount of time to determine whether a grievance alleges officer physical misconduct.

   Second, even if the Court orders such a review, it is not clear how many grievances would be responsive. For instance, if only one grievance were responsive, Defendants would not object to producing the single OPR file associated with the grievance. On the other hand, if all 1,174 grievances were responsive, it would take hundreds of hours to compile and produce every OPR file associated with those grievances. Although some OPR files have been scanned electronically, most exist in paper form and would need to be scanned electronically to be reviewed and prepared for production. This would be a monumental task, diverting limited resources of the Sheriff's Office and having a significant impact on its operations. Defendants would object to the production of over one thousand OPR files. However, the true number of responsive grievances is most likely somewhere in between those two extremes. Although the review of over one thousand grievances would be unduly burdensome, if the Court orders it, then Defendants' position on whether the associated OPR files, if any, should also be produced would depend on the number of responsive grievances.

   Third, producing the entirety of the OPR files related to any grievance alleging physical conduct against a detainee is not proportional to the needs of the case. To the extent that Plaintiff's *Monell* claim (the only claim possibly related to this broad request) makes allegations concerning reports to OPR or investigations, a manual review of such a large scope, including thousands of files and emails, is not proportional to his claim.

   For example, Plaintiff alleges that CCSO "[failed] to investigate or discipline officers who reportedly beat detainees in elevators that lack security cameras." (Am. Compl. ¶ 75(c), ECF No. 84.) A review of thousands of files and emails is not necessary to prove that CCSO did, in fact, investigate or recommend discipline for officers as a result of allegations of physical misconduct. The data, in and of itself, establishes the existence of OPR investigations into physical misconduct. Should Plaintiff believe that the numbers are insufficient, other data could be obtained or testimony elicited via deposition or interrogatories, without the burden of reviewing thousands of files or emails that are not directly related to Plaintiff or the type of physical misconduct he alleges.

   Plaintiff also alleges that CCSO violated his civil rights by "[t]urning a blind eye to allegations, reports, and other news of incidents involving officers beatings [*sic*] detainees in elevators that lack security cameras." (*Id.* ¶ 75(b).) While Defendants have already established that CCSO cannot specifically search for words like "elevator" or "security camera" in handwritten grievances, other methods of discovery are clearly available that would answer the question of whether CCSO turned a blind eye to allegations of officer physical misconduct. A review of all such OPR files is not proportional to the needs of the case or the issues at stake.

Notably, CCSO previously searched for grievances related to the cases identified in Paragraph 52 of Plaintiff's amended complaint. CCSO has already produced the grievances that resulted from that search, to the extent they existed.

Defendants respectfully request that the Court deny Plaintiff's motion to compel.

                                          Respectfully submitted,

                                          EILEEN O'NEILL BURKE
                                          State's Attorney of Cook County

Dated: June 5, 2025                        /s/ *Samuel D. Branum*
                                          Special Assistant State's Attorney

Monica Burkoth (burkothm@jbltd.com)
Samuel D. Branum (branums@jbltd.com)
Johnson & Bell, Ltd.
33 W. Monroe, Ste. 2700
Chicago, Illinois 60603
(312) 372-0770