**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CHRISTIAN A. GONZALEZ,

             Plaintiff,

    vs.

JUSTO RODRIGUEZ (#17897), DAMIR
RASIC (#17493), ALEN DUHARKIC
(#18248), JOHN CHAVEZ (#16361),
ANDREW SACUTA (#17496), JOHN
CARDEN (#17367), ELIUD DURAN
(#3214), STEVEN STROH (#17808),
TIMOTHY BEYER (#17914), DOUGLAS
CONTORNO (#17467), JUSTIN VAN
GIESEN (#16527), MACIEJ KRZEMINSKI
(#17738), WILLIAM FILIPIAK (#17770),
SERGEANT SHEEHAN (#3234),
THOMAS
J. DART, and COOK COUNTY,

             Defendants.

No. 21 CV 6243

Hon. Steven C. Seeger

**DEFENDANT RODRIGUEZ'S ANSWER TO PLAINTIFF'S
AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES**

Defendant Justo Rodriguez by his attorney Eileen O'Neill Burke, State's Attorney

of Cook County, through her Assistant State's Attorney Oliver Kassenbrock, for his

answer to Plaintiff's Amended Complaint and Affirmative defenses states:

**INTRODUCTION**

1.      Mr. Gonzalez is a pretrial detainee at the Cook County Jail. On May 7, 2020,

Mr. Gonzalez was brutally assaulted in an elevator at Cook County Jail that lacks any

security camera by Defendants Rodriguez, Rasic, and Duharkic, while being escorted—

unarmed, restrained and defenseless. The assault caused blood to stream down Mr.

Gonzalez's face, smearing onto the walls of the elevator and pooling on the ground.

1

**ANSWER: Defendant Rodriguez admits that Plaintiff is a pre-trial detainee at Cook County Jail. Defendant Rodriguez denies that he or any other Defendant "brutally assaulted" Plaintiff. Defendant Rodriguez denies all other allegations contained in paragraph 1.**

2.      Defendant Chavez was present inside the elevator but did nothing to intervene. Defendant Sheehan had been recording the escort on his body-worn camera, and he, too, could have intervened, but he instead stepped away to let the assault happen before returning to the scene. Defendants Sacuta, Carden, Duran, Stroh, Beyer, Contorno, Van Giesen, Krzeminski, and Filipiak were in the vicinity and could have intervened as well, but none made any effort to do so.

**ANSWER: The allegations in paragraph 2 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 2.**

3.      Mr. Gonzalez brings the claims set forth in this amended complaint pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of law, of Mr. Gonzalez's constitutional right to be free from excessive and unreasonable use of force pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.

**ANSWER: Defendant Rodriguez admits that Plaintiff brings his suit pursuant to 42 U.S.C. § 1983 but denies any wrongdoing and denies that Plaintiff is entitled to any relief whatsoever.**

<u>PARTIES</u>

4.      Mr. Gonzalez is a resident of Cook County, Illinois, and a pretrial detainee at Cook County Jail.  He is currently housed in Division 9.  Mr. Gonzalez's claims in this action arise out of his detention at Cook County Jail.

**ANSWER: Defendant Rodriguez lacks knowledge or information sufficient to form a belief as to Plaintiff's residency when not incarcerated. Defendant Rodriguez**

**admits that Plaintiff was housed at the Cook County Jail as a pre-trial detainee on the date of the alleged incident. Defendant Rodriguez denies that Plaintiff has been housed at the Cook County Jail or maintained the status of "pre-trial detainee" continuously since the alleged incident.** *See, e.g.*, **guilty plea in** *People v. Gonzalez*, **19CR1633801, Notice of Change of Address in** *Gonzalez v. Rodriguez*, **23-cv-3152 at dkt. 47. Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the status of Plaintiff's current housing. Defendant Rodriguez admits that Plaintiffs claims are premised on allegations arising out of his detention at the Cook County Jail but denies any liability and denies that Plaintiff is entitled to any relief whatsoever.**

5. Defendant Justo Rodriguez (#17897), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER: Defendant Rodriguez admits that he was employed as a correctional officer on the date of the alleged incident in the complaint but denies all other allegations in paragraph 5.**

6. Defendant Damir Rasic (#17493), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER: Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 6.**

7. Defendant Alen Duharkic (#18248), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER: Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 7.**

8. Defendant John Chavez (#16361), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER: Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 8.**

9. Defendant Andrew Sacuta (#17496), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER: Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 9.**

10. Defendant John Carden (#17367), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER: Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 10.**

11. Defendant Eliud Duran (#3214), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER: Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 11.**

12. Defendant Steven Stroh (#17808), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER: Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 12.**

13. Defendant Timothy Beyer (#17914), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER: Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 13.**

14. Defendant Douglas Contorno (#17467), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER: Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 14.**

15. Defendant Justin Van Giesen (#16527), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER: Defendant Rodriguez lacks knowledge or information sufficient to form**

a belief about the truth of the allegations in paragraph 15.

16.     Defendant Maciej Krzeminski (#17738), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER: Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 16.**

17.     Defendant William Filipiak (#17770), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER: Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 17.**

18.     Defendant Sergeant Sheehan (#3234), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER: Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 18.**

19.     Defendant Thomas J. Dart is the Sheriff of Cook County, Illinois. Sheriff Dart oversees the Cook County Department of Corrections, its operations, and its employees. Sheriff Dart is responsible for training officers and for setting all policies and procedures at Cook County Jail. He is sued in his official capacity.

**ANSWER: Defendant Rodriguez admits that Thomas Dart is the Sheriff of Cook County and that he is sued in his official capacity. Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 19.**

20.     Defendant Cook County is joined in this action pursuant to *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003).

**ANSWER: Paragraph 20 contains a conclusion of law rather than an allegation of fact and therefore requires no response. To the extent that an answer is required, Defendant Rodriguez admits only that this is the basis for Plaintiff's joinder but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. § 1331 (federal questions) and § 1343 (civil rights actions).

**ANSWER: Defendant Rodriguez admits that this Court has jurisdiction but denies any wrongdoing and denies that Plaintiff is entitled to any relief whatsoever.**

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a

substantial part of the events and omissions giving rise to Mr. Gonzalez's claims

occurred in this District.

**ANSWER: Defendant Rodriguez admits that venue is proper but denies any wrongdoing and denies that Plaintiff is entitled to any relief whatsoever.**

## STATEMENT OF FACTS

23.     On May 7, 2020, Mr. Gonzalez was in the custody of the Cook County

Sheriff's Department at Cook County Jail and housed in cell #1033, Tier 1F, Division 9.

**ANSWER: Defendant Rodriguez admits the allegations in paragraph 23.**

24.     Around 10:22 a.m. on May 7 2020, Defendant Sacuta entered Mr.

Gonzalez's cell, purportedly for the purpose of distributing COVID-19 masks, soap, and

a lunch tray.  At least four other officers stood outside of Mr. Gonzalez's cell as

Defendant Sacuta entered.

**ANSWER: The allegations in paragraph 24 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 24.**

25.     On information and belief, Defendant Sacuta in fact entered Mr.

Gonzalez's cell to seek retaliation for an alleged incident two days earlier, on May 5, 2020.

During that incident, Mr. Gonzalez had allegedly struck another officer, Garza, when Garza, another officer named Zamfirescu, and Defendant Sacuta approached Mr. Gonzalez's cell to perform a vitals check, in response to which Defendant Sacuta allegedly struck Mr. Gonzalez in the torso.

**ANSWER: The allegations in paragraph 25 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 25.**

26.    An altercation ensued after Defendant Sacuta entered Mr. Gonzalez's cell on May 7, 2020. Several of the officers who had been standing outside of Mr. Gonzalez cell entered at that time. In addition, approximately ten other officers came rushing toward Mr. Gonzalez's cell. In total, approximately fifteen officers were assembled in and around Mr. Gonzalez's cell shortly after the altercation broke out.

**ANSWER: Defendant Rodriguez admits that he and several other officers responded to an altercation in Plaintiff's cell on the date in question. Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 26.**

27.    Mr. Gonzalez was pulled out of his cell with his wrists cuffed behind his back and his legs shackled. Approximately four officers pushed Mr. Gonzalez's face against the wall next to his cell and conducted a pat-down search. Body-worn camera footage shows that there was no blood on Mr. Gonzalez's face at that time:

**ANSWER: Defendant Rodriguez denies that Plaintiff accurately characterizes the body-worn camera footage. The video speaks for itself. Defendant Rodriguez admits that Plaintiff was restrained in handcuffs and shackles after the altercation. Defendant Rodriguez further admits that Plaintiff was held against the wall while a pat-down search was conducted after he was removed from his cell. Defendant Rodriguez denies that Plaintiff's faced was pushed against the wall. Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 27 but denies any wrongdoing and denies**

**that Plaintiff is entitled to any relief whatsoever.**



    28.    Body-worn camera footage further shows that there was no blood left on

the wall against which Mr. Gonzalez's face was pressed while he was searched:

**ANSWER: Defendant Rodriguez denies that Plaintiff accurately characterizes the body-worn camera footage. The video speaks for itself. Defendant Rodriguez denies that Plaintiff's faced was pressed against the wall while the search was conducted. Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 28 but denies any wrongdoing and denies that Plaintiff is entitled to any relief whatsoever.**



29.    Mr. Gonzalez was then escorted by Defendants Rodriguez, Rasic, and Duharkic out of Tier 1F and to the dispensary.  Mr. Gonzalez was escorted walking backwards, bent over at the waist at an almost 90-degree angle, with one officer holding his head down by placing a hand on the back of his neck, so that Mr. Gonzalez was facing the ground as he walked:

**ANSWER: Defendant Rodriguez denies that Plaintiff accurately characterizes the body-worn camera footage. The video speaks for itself. Defendant Rodriguez admits that he, along with Defendants Rasic and Duharkic, escorted Plaintiff from Tier 1F to the dispensary on the date in question. Defendant Rodriguez further answers that he and the other Defendants followed standard high risk movement procedures in escorting Plaintiff. Defendant Rodriguez denies all other allegations in paragraph 29 and furthermore denies all wrongdoing and denies that Plaintiff is entitled to any relief whatsoever.**



30.     The body-worn camera footage does not show any blood dripping off

of Mr. Gonzalez's face or blood on the ground as Mr. Gonzalez was escorted away.

**ANSWER: Defendant Rodriguez denies that Plaintiff accurately characterizes the body-worn camera footage. The video speaks for itself. Defendant Rodriguez denies all other allegations in paragraph 30 and furthermore denies all wrongdoing and denies that Plaintiff is entitled to any relief whatsoever.**

31.     Defendants Rodriguez, Rasic, and Duharkic then escorted Mr. Gonzalez,

in the same position, down a hallway toward the elevator in Division 9. Defendant Sheehan walked with them, his body-worn camera activated, and called the elevator when they got there.

**ANSWER: Defendant Rodriguez admits that he, along with Defendants Rasic, Duharkic, and Sheehan, escorted Plaintiff to one of the elevators in Division 9 at which point someone called the elevator. Defendant Rodriguez lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 31 but denies any wrongdoing and denies that Plaintiff is entitled to any relief whatsoever.**

32. On information and belief, there was (and still is) no security camera installed in the elevator in Division 9.

**ANSWER: Defendant Rodriguez lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32.**

33. Once the elevator arrived, Defendants Rodriguez, Rasic, and Duharkic escorted Mr. Gonzalez inside the elevator and led him to the back right-hand corner, where they turned him around to face the corner and surrounded him. Defendant Chavez also entered the elevator, a step behind the others.

**ANSWER: Defendant Rodriguez admits that he, along with Defendants Rasic and Duharkic, escorted Plaintiff into the elevator and positioned him the back corner facing the wall. Defendant Rodriguez lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 33 but denies any wrongdoing and denies that Plaintiff is entitled to any relief whatsoever.**

34. Once Defendants Rodriguez, Rasic, Duharkic, and Chavez and Mr. Gonzalez were inside the elevator, Defendant Sheehan turned to walk away.

**ANSWER: Defendant Rodriguez admits that after he, Plaintiff, and Defendants Rasic, Duharkic, and Chavez were in the elevator, Defendant Sheehan walked away from the elevator. Defendant Rodriguez lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 34 but denies any wrongdoing and denies that Plaintiff is entitled to any relief whatsoever.**

35.     On information and belief, Defendants Rodriguez, Rasic, Duharkic, Chavez, and Sheehan were aware that there was no security camera installed in the elevator, and no video camera present other than Defendant Sheehan's body-worn camera.

**ANSWER: Defendant Rodriguez denies the allegations in paragraph 35 as to himself. Defendant Rodriguez lacks knowledge or information to form a belief about the subjective knowledge or state of mind of any other defendant.**

36.     As Defendant Sheehan turned away from the elevator, his body-worn camera showed that there was no blood on the ground across which Mr. Gonzalez had just been escorted with his head down, facing the ground:

**ANSWER: Defendant Rodriguez denies that Plaintiff accurately characterizes the body-worn camera footage. The video speaks for itself. Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 36 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**



37.     Defendant Sheehan walked toward the room shown at the far left hand side of the above screenshot, where the other Defendant officers were stationed, purportedly to get Mr. Gonzalez's ID.  Defendant Sheehan was away from the elevator for approximately 30 seconds.

**ANSWER: Defendant Rodriguez lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 but denies any wrongdoing and denies that Plaintiff is entitled to any relief whatsoever.**

38.     While Defendant Sheehan was away from the elevator, and with no camera in sight, Defendants Rodriguez, Rasic, and Duharkic brutally attacked Mr. Gonzalez, including by kneeing and punching him in the face and head repeatedly, causing him to bleed uncontrollably.

**ANSWER: Defendant Rodriguez denies all allegations in paragraph 38.**

39.     Defendant Rodriguez saw that Mr. Gonzalez was bleeding and forcefully shoved Mr. Gonalez's head into the corner of the elevator.  Blood streamed down Mr. Gonzalez's face as Defendants Rodriguez, Rasic, and Duharkic continued to beat him.

**ANSWER: Defendant Rodriguez denies all allegations in paragraph 39.**

40.     Defendant Chavez remained present in the elevator as Defendants Rodriguez, Rasic, and Duharkic assaulted Mr. Gonzalez, but he simply stood by, without making any effort to intervene or protect Mr. Gonzalez.

**ANSWER: Defendant Rodriguez denies that he or any other defendant "assaulted Mr. Gonzalez." Defendant Rodriguez admits that Defendant Chavez was present in the elevator during the transport of Plaintiff on the day in question. Defendant Rodriguez denies all remaining allegations in paragraph 40 and furthermore denies all wrongdoing and denies that Plaintiff is entitled to any relief whatsoever.**

41.     Defendant Sheehan came rushing back toward the elevator and entered.

At that time, Defendants Rodriguez, Rasic, and Duharkic had Mr. Gonzalez surrounded and pushed up against the wall in the corner of the elevator, with his hands restrained behind his back.

**ANSWER: Defendant Rodriguez admits that Plaintiff's hands were restrained behind his back throughout the escort. Defendant Rodriguez further admits that while in the elevator he was positioned in the back corner of the elevator facing the wall and that Plaintiff's body was at least briefly held against the wall. Answering further, Defendant Rodriguez admits that Defendant Sheehan re-entered the elevator shortly after he left. Defendant Rodriguez lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 41 but denies any wrongdoing and denies that Plaintiff is entitled to any relief whatsoever.**

42.    With Defendant Sheehan inside the elevator, the door closed and the elevator ascended or descended.

**ANSWER: Defendant Rodriguez admits that the elevator descended after the doors closed and that Defendant Sheehan was on the elevator at that time. Defendant Rodriguez denies all other allegations in paragraph 42.**

43.    When the door opened Defendants Rodriguez, Rasic, and Duharkic escorted Mr. Gonzalez off in the same position as they had escorted him from his cell to the elevator. As Mr. Gonzalez exited the elevator, Defendant Sheehan's body-worn camera shows blood on the left side of Mr. Gonzalez's uniform. It also shows blood streaked in the corner of the elevator where Mr. Gonzalez had been standing and pooling at the floor:

**ANSWER: Defendant Rodriguez admits that he, along with Defendant Rasic and Defendant Duharkic, escorted Plaintiff off the elevator. Defendant Rodriguez denies that Plaintiff accurately characterizes the body-worn camera footage. The video speaks for itself. Defendant Rodriguez denies the remaining allegations in paragraph 43 and furthermore denies all wrongdoing and denies that Plaintiff is entitled to any relief whatsoever.**



44.     After being escorted off the elevator, Mr. Gonzalez was taken to a holding

area known as the bull pen, which has individual holding cells. Footage from the

holding cell shows that Mr. Gonzalez's face and uniform were covered in blood:

**ANSWER: Defendant Rodriguez admits that Plaintiff was escorted from the elevator to a holding cell. Defendant Rodriguez denies that Plaintiff accurately characterizes the body-worn camera footage. The video speaks for itself. Defendant Rodriguez denies the remaining allegations in paragraph 44 and furthermore denies all wrongdoing and denies that Plaintiff is entitled to any relief whatsoever.**



45.    Approximately twenty minutes later, Mr. Gonzalez was taken to the dispensary, where medical staff immediately called 911.  Mr. Gonzalez was bleeding from the mouth and nose area.  He had significant facial swelling, his right eye was swollen shut, he had multiple lacerations to his right eyebrow area, and he suffered an injury to his nose.

**ANSWER: The allegations in paragraph 45 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 45 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

46.    Mr. Gonzalez was placed on a backboard and in a cervical collar.  He was then transported to Mount Sinai Hospital in Chicago via ambulance.

**ANSWER: The allegations in paragraph 46 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 46 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

47.     At Mount Sinai, Mr. Gonzalez was treated for acute blunt head and facial trauma. Mr. Gonzalez's right eye was swollen shut.  Mr. Gonzalez's injuries also included a large parietal- temporal scalp hematoma, extensive swelling in his face and eye area, and multiple lacerations, facial abrasions, and bruises.  One of the lacerations in Mr. Gonzalez's right eye area was repaired with sutures.

**ANSWER: The allegations in paragraph 47 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 47 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

48.     The above-described injuries caused, and continue to cause, Mr. Gonzalez significant pain and suffering.  Mr. Gonzalez continues to suffer from blurred vision in his right eye, an ongoing injury to his nose, and frequent pain and discomfort.

**ANSWER: The allegations in paragraph 48 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 48 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

49.     As a pretrial detainee at Cook County Jail, Mr. Gonzalez must continue to interact with Defendants, causing him to fear that he will be subject to another officer assault in an elevator that does not have a security camera.

**ANSWER: Defendant Rodriguez lacks knowledge or information sufficient to form a belief about Plaintiff's subjective state of mind. However, to the extent that Defendant Rodriguez—among, on information and belief, several of the other**

**individual Defendants—no longer works in the Cook County Jail, he denies the allegations in paragraph 49 and furthermore denies all wrongdoing and denies that Plaintiff is entitled to any relief whatsoever.**

50. Following his treatment at Mount Sinai Hospital, Mr. Gonzalez received a bill in the amount of $1,006.00 for care rendered on May 7, 2020.

**ANSWER: The allegations in paragraph 50 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 50.**

51. The practice of using elevators that do not have security cameras, including the elevator in Division 9 where Mr. Gonzalez was assaulted, to beat detainees has a long, well-documented history at Cook County Jail. Those elevators are the few, if not only, places in Cook County Jail through which detainees are transported where there are no security cameras installed. On information and belief, officers at Cook County Jail take advantage of the fact that there are no cameras in certain elevators, using those spaces to assault detainees out of view.

**ANSWER: Defendant Rodriguez denies that he or any other Defendant assaulted Plaintiff. Defendant Rodriguez denies that he is aware of or has participated in the "practice" described by Plaintiff in paragraph 51. Defendant Rodriguez denies that he is aware of or has participated in "officers at Cook County Jail tak[ing] advantage of the fact that there are no cameras in certain elevators, using those spaces to assault detainees out of view." Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 51 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

52. In recent years, Defendants Dart and Cook County have litigated and/or settled numerous lawsuits alleging that Cook County Jail officers assaulted detainees in elevators lacking security cameras, including the elevator where Mr. Gonzalez was assaulted. For example:

a.  In *Crossley v. Dart*, No. 19-cv-8263 (N.D. Ill. filed Dec. 17, 2019), a Cook County Jail detainee alleged that officers took him and two other detainees into Division 9 segregation custody via elevator and, while in the elevator, the officers beat the plaintiff and other detainees in the head and midsection. The plaintiff was then led to another elevator where an officer said: "be cool, it's a camera on this one."

b.  In *Jackson v. Stubenvoll*, No. 16-cv-05746 (N.D. Ill. filed May 31, 2016), a pretrial detainee at Cook County Jail alleged that an officer pushed him in an elevator in Division 9 and that the officer knew there was no camera in the elevator.

c.  In *Hudson v. Preckwinkle*, No. 13-cv-8752 (N.D. Ill. filed Dec. 6, 2013), an expert witness testified that the term "elevator ride" is a term used at Cook County Jail to "describe a beating by correctional officers where there are no cameras." The expert further testified that his review of video footage at Cook County Jail led him to conclude that "elevator rides" were occurring at Cook County Jail. Regarding the elevator in Division 9, the former Unit Director for the Office of Professional Review at the Sheriff's Office testified: "There are no video cameras inside the elevator. We know that. Everybody else knows that." A Cook County Jail detainee testified: "[The elevator is] where they [the officers] do all their beating up at. . . . They take you to the elevator, where there are no cameras at."

d.  In *Hudson*, the plaintiff alleged: "Officer 'D. Roach' beat [a detainee] during an 'elevator ride' after the two men had a verbal altercation. During that altercation, the officer threatened [the detainee] with an 'elevator ride.' A few hours later, Officer D. Roach and another officer came to [the detainee's] cell and forced him into the elevator. While in the elevator, the officers beat [the detainee], causing him a black eye, bruises, and swelling on his head."

e.  In *Adkisson v. Dart*, No. 09-cv-4660 (N.D. Ill. filed Aug. 11, 2009), a pretrial detainee alleged that, after processing at Division 9, an officer escorted him in an elevator that did not have a camera and slapped him in the head. The detainee alleged that "when correctional officers wish to illegally punish and harm detainees they will escort those detainees through a special route which does not include video cameras and that this is a regular practice."

**ANSWER: The allegations in paragraph 52 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations**

19

in paragraph 52.

53.    The absence of a security camera in the elevator where Mr. Gonzalez was assaulted, and the practice of officers using that elevator to assault detainees, has also been documented in the media.  For instance, a detainee explained in a 2019 article that "a lot of guys get physically assaulted in the elevator.  There's cameras everywhere except the elevator in Division 9."[1]

**ANSWER: Defendant Rodriguez denies that he or any other Defendant assaulted Plaintiff. The allegations in paragraph 53 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 53 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

54.    On information and belief, Defendant Dart and others with relevant policymaking authority at Cook County Jail are aware of the absence of security cameras in certain elevators at Cook County Jail, including the elevator where Mr. Gonzalez was assaulted, as well as the practice of officers beating detainees in those elevators, but have not taken any steps to install security cameras and have allowed the practice to flourish.

**ANSWER: Defendant Rodriguez denies that he or any other Defendant assaulted Plaintiff. The allegations in paragraph 54 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 54 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

55.    The practice of officers beating detainees in elevators without security

---

[1] Valerie Kiebala, *Sheriff Tom Dart says Cook County Jail is the first to end solitary confinement. Here's what it looks like from the inside.* THE CHICAGO REPORTER (Dec. 17, 2019), https://www.chicagoreporter.com/sheriff-tom-dart-says-cook-county-jail-is-the-first-to-end-solitary-confinement-heres-what-it-looks-like-from-the-inside/.

cameras has also flourished due to Defendant Dart's failure to adequately train and supervise officers with respect to the appropriate use of force, including inside of the elevators at Cook County Jail to ensure the adequate supervision of detainees and officers and to ensure the safety of detainees.

**ANSWER: Defendant Rodriguez denies that he or any other Defendant "beat" Plaintiff. The allegations in paragraph 55 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 55 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

56.     Mr. Gonzalez has exhausted all available administrative remedies under the Prison Litigation Reform Act.

**ANSWER: Paragraph 56 contains a conclusion of law rather than an allegation of fact and therefore requires no response. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 56.**

## COUNT I – 42 U.S.C. § 1983 CLAIM FOR EXCESSIVE FORCE
### (Against Defendants Rodriguez, Rasic, and Duharkic)

57.     Mr. Gonzalez incorporates by reference paragraphs 1 through 56 as if fully set forth herein.

**ANSWER: Defendant Rodriguez incorporates by reference his answers to paragraphs 1 through 56 as if set forth fully herein.**

58.     Mr. Gonzalez had the right to be free from excessive and unreasonable use of force pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.

**ANSWER: Paragraph 58 contains a conclusion of law rather than an allegation of fact and therefore requires no response. To the extent that an answer is required,**

**Defendant Rodriguez admits that this is a generally correct statement of law, but denies that Plaintiff's constitutional rights have been violated, denies any wrongdoing, and denies that Plaintiff is entitled to any relief whatsoever.**

59.     In violation of his constitutional rights, Defendants Rodriguez, Rasic, and Duharkic assaulted Mr. Gonzalez in an elevator in Division 9 of Cook County Jail on May 7, 2020, including by repeatedly kneeing and punching him in the head and face, without provocation from Mr. Gonzalez, who was unarmed, restrained, and defenseless. Defendants' use of force was thus excessive and unreasonable.

**ANSWER: Defendant Rodriguez denies all allegations in paragraph 59.**

60.     Defendants Rodriguez, Rasic, and Duharkic used excessive and unreasonable force against Mr. Gonzalez intentionally and willfully, in retaliation for the altercations in Mr. Gonzalez's cell that preceded the elevator incident. Defendants' use of force violated Mr. Gonzalez's constitutional right to be free from excessive and unreasonable use of force under clearly established law.

**ANSWER: Defendant Rodriguez denies all allegations in paragraph 60.**

61.     As a direct and proximate result of Defendants Rodriguez, Rasic, and Duharkic's excessive and unreasonable force, Mr. Gonzalez has suffered significant pain, injury, and emotional distress.

**ANSWER: Defendant Rodriguez denies all allegations in paragraph 61.**

62.     At all times relevant, Defendants Rodriguez, Rasic, and Duharkic acted under color of state law and in the course and scope of their employment.

**ANSWER: Paragraph 62 contains conclusions of law rather than allegations of fact and therefore requires no response. To the extent that an answer is required, Defendant Rodriguez admits that on the alleged date, he was employed by the Cook**

County Sheriff's Office and was on duty. Furthermore, Defendant Rodriguez denies all wrongdoing and denies that Plaintiff is entitled to any relief whatsoever.

<u>COUNT II – 42 U.S.C. § 1983 CLAIM FOR FAILURE TO INTERVENE</u>
**(Against Defendants Chavez, Sacuta, Carden, Duran, Stroh, Beyer, Contorno, Van Giesen, Krzeminski, Filipiak, and Sheehan)**

63.     Mr. Gonzalez incorporates by reference paragraphs 1 through 63 as if fully set forth herein.

**ANSWER: Defendant Rodriguez incorporates by reference his answers to paragraphs 1 through 62 as if set forth fully herein.**

64.     Defendant Chavez was present in the elevator when Defendants Rodriguez, Rasic, and Duharkic were using excessive and unreasonable force against Mr. Gonzalez on May 7, 2020, and was aware that Mr. Gonzalez was being actively assaulted.

**ANSWER: Defendant Rodriguez denies that he or any other defendant was "**using excessive and unreasonable force against**" Plaintiff, or that he or any other Defendant "**actively assaulted**" Plaintiff. The allegations in paragraph 64 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 64 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

65.     Defendant Chavez had a realistic opportunity to intervene to prevent the violations of Mr. Gonzalez's constitutional rights, either by physically intervening or by insisting that his fellow officers stop assaulting Mr. Gonzalez.

**ANSWER: Defendant Rodriguez denies that "**violations of [Plaintiff's] constitutional rights**" occurred or that he or any other Defendant assaulted Plaintiff. The allegations in paragraph 65 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 65 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

66.     Instead of taking any steps to intervene, however, Defendant Chavez stood by and witnessed the assault of Mr. Gonzalez play out.

**ANSWER: Defendant Rodriguez denies that he or any other Defendant assaulted Plaintiff. The allegations in paragraph 66 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 66 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

67.     Defendant Sheehan was also in the vicinity at the time of Mr. Gonzalez's assault and had a realistic opportunity to intervene to prevent the assault, including by remaining present in the elevator with his body-worn camera activated.  Instead of taking any steps to intervene, however, on information and belief, Defendant Sheehan, deliberately left the elevator so that Defendants  Rodriguez, Rasic, and Duharkic could assault Mr. Gonzalez without being caught on camera.  Defendant Sheehan then deliberately stayed down the hall for approximately 30 seconds while the assault took place before rushing back to the elevator to restore calm.

**ANSWER: Defendant Rodriguez denies that he or any other Defendant assaulted Plaintiff. The allegations in paragraph 67 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 67 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

68.     Defendants Sacuta, Carden, Duran, Stroh, Beyer, Contorno, Van Giesen, Krzeminski, and Filipiak were in the vicinity at the time of Mr. Gonzalez's assault as well.  They were down the hallway from the elevator and could realistically have arrived there within a few seconds.  The elevator door was open, so they could have heard Mr. Gonzalez being assaulted inside.  Furthermore, on information and belief,

they knew or had reason to know that Mr. Gonzalez would be assaulted in the elevator

once Defendant Sheehan left the scene. Instead of taking any steps to intervene at any

time during the assault, however, they stood by and let the assault play out.

**ANSWER: Defendant Rodriguez denies that he or any other Defendant assaulted Plaintiff. The allegations in paragraph 68 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 68 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

69.     Defendants' failures to intervene violated Mr. Gonzalez's constitutional

right to be free from excessive and unreasonable use of force under clearly established

law.

**ANSWER: Defendant Rodriguez denies that Plaintiff's constitutional rights were violated or that he or any other Defendant used "**excessive and unreasonable use of force**" against Plaintiff. The allegations in paragraph 69 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 69 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

70.     As a result of Defendants' failures to intervene, Mr. Gonzalez's

constitutional rights were violated, causing Mr. Gonzalez to suffer significant pain,

injury, and emotional distress.

**ANSWER: Defendant Rodriguez denies that Plaintiff's constitutional rights were violated. The allegations in paragraph 70 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 70 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

71.     At all times relevant, Defendants Chavez, Sacuta, Carden, Duran, Stroh,

Beyer, Contorno, Van Giesen, Krzeminski, Filipiak, and Sheehan acted under color of

state law and in the course and scope of their employment.

**ANSWER: Paragraph 71 contains conclusions of law rather than allegations of fact and therefore requires no response. Further, the allegations in paragraph 71 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 71 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

<u>COUNT III – 42 U.S.C. § 1983 CLAIM PURSUANT TO *MONELL*</u>
**(Against Defendant Dart in His Official Capacity as Cook County Sheriff and Defendant Cook County for Indemnification Purposes Only)**

72.    Mr. Gonzalez incorporates by reference paragraphs 1 through 72 as if fully

set forth herein.

**ANSWER: Defendant Rodriguez incorporates by reference his answers to paragraphs 1 through 71 as if set forth fully herein.**

73.    The violations of Mr. Gonzalez's constitutional rights, his damages, and

the conduct of the individual Defendants were directly and proximately caused by a

persistent and widespread practice at Cook County Jail of officers beating detainees in

the elevator where Mr. Gonzalez was assaulted and others that lack security cameras.

**ANSWER: Defendant Rodriguez denies that Plaintiff's constitutional rights were violated. Defendant Rodriguez denies that he or any other Defendant assaulted or "beat" Plaintiff or that he engaged in or was aware of a pattern of assaulting or beating detainees. The allegations in paragraph 73 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 73 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

74.    The violations of Mr. Gonzalez's constitutional rights, his damages, and

the conduct of the individual Defendants were further directly and proximately caused

by a persistent and widespread practice at Cook County Jail of facilitating the practice

of officers beating detainees in elevators that lack security cameras, including by:

a. Failing to establish and/or implement policies, practices, and procedures to ensure adequate supervision of detainees and officers at Cook County Jail, including by failing to install security cameras in all elevators that are used to transport detainees;

b. Turning a blind eye to allegations, reports, and other news of incidents involving officers beatings detainees in elevators that lack security cameras;

c. Failing to investigate or discipline officers who reportedly beat detainees in elevators that lack security cameras;

d. Failing to properly train and supervise officers to avoid the use of excessive force, including when transporting detainees in elevators; and

e. Failing to establish and/or implement policies, practices, and procedures to ensure that detainees at Cook County Jail are free from excessive force.

**ANSWER: Defendant Rodriguez denies that Plaintiff's constitutional rights were violated. The allegations in paragraph 74 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 74 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

75. At all times relevant, Defendant Dart possessed knowledge of the aforementioned deficiencies in the policies, practices, customs, and procedures at Cook County Jail, including because of the history of litigation and media coverage about officers beating detainees in elevators that lack security cameras. Yet Defendant Dart approved and/or deliberately turned a blind eye to these deficiencies, allowing the deficiencies to continue.

**ANSWER: The allegations in paragraph 75 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the allegations in paragraph 75 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

76.     As a direct and proximate result of these widespread and persistent practices, Mr. Gonzalez's constitutional rights were violated and he was assaulted by the individual Defendants, causing Mr. Gonzalez to suffer significant injuries, pain, suffering, and emotional distress.

**ANSWER: Defendant Rodriguez denies that Plaintiff's constitutional rights were violated. Defendant Rodriguez denies that he or any other Defendant assaulted Plaintiff. The allegations in paragraph 76 are not directed toward Defendant Rodriguez. To the extent that an answer is required, Defendant Rodriguez lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 76 but denies wrongdoing and denies that Plaintiff is entitled to any recovery whatsoever.**

## PRAYER FOR RELIEF

WHEREFORE, Defendant Rodriguez respectfully asks that this Court enter judgment in his favor and against Plaintiff, award all applicable costs and fees, and for any further relief that this Court deems just and proper.

## JURY DEMAND

Defendant Rodriguez demands a jury trial on all issues so triable.

## AFFIRMATIVE DEFENSES

Defendants submit the following affirmative defenses.

I.     **First Affirmative Defense – Qualified Immunity**

1.     Defendant Rodriguez's conduct was at all times objectively reasonable under the circumstances and did not violate any of Plaintiff's clearly established constitutional or federally protected rights.

2.     Accordingly, Defendant Rodriguez is entitled to qualified immunity.

## II.     Second Affirmative Defense – Failure to Mitigate

3.      Without waiving Defendants' denial to Plaintiff's allegations and to the extent Plaintiff claims any damages against Defendants, Plaintiff had a duty to mitigate those damages.  *Wells v. City of Chicago*, 2009 U.S. Dist. LEXIS 15792, *23–24, 2009 WL 528307 (N.D. Ill. Feb. 25, 2009).

4.      Without waiving Defendants' denials to Plaintiff's allegations and to the extent Plaintiff claims any damages against Defendants, the claims are barred to the extent Plaintiff failed to act reasonably to mitigate his damages.

5.      To the extent Plaintiff has failed to mitigate his damages, any award of damages may be reduced for his failure to mitigate.

## III.    Third Affirmative Defense - Contributory and Comparative Fault

6.      At all relevant times, Plaintiff owed a duty to act reasonably to mitigate injuries and damage.

7.      To the extent any injury or damages claimed by Plaintiff were proximately caused, in whole or in part, by negligent, willful, wanton, and/or other wrongful conduct on the part of Plaintiff, any verdict or judgment obtained by Plaintiff must be reduced or barred by application of the principles of contributory/comparative fault.

Defendant reserves the right to add additional affirmative defenses as such defenses become known through the course of this litigation.

Respectfully submitted

EILEEN O'NEILL BURKE
State's Attorney of Cook County

By: */s/ Oliver Kassenbrock*

29

Oliver Kassenbrock
Assistant State's Attorney
Conflicts Counsel Unit
50 W. Washington, Ste 2760
Chicago, IL 60602
Oliver.kassenbrock@cookcountysao.org
(312) 603-1426
Atty No. 6345940