**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTIAN A. GONZALEZ, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| -*vs*- | ) | Case No. 21-cv-6243 |
| | ) | |
| JUSTO RODRIGUEZ et al., | ) | Judge Jeffrey I. Cummings |
| | ) | Magistrate Judge Maria Valdez |
| *Defendants.* | ) | |
| | ) | |

**DEFENDANT DAMIR RASIC'S ANSWER AND AFFIRMATIVE
DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT**

Defendant, DAMIR RASIC, by his attorney EILEEN O'NEILL BURKE, State's Attorney

of Cook County, through her Special Assistant State's Attorneys, JOHNSON & BELL, LTD.,

answers Plaintiff's amended complaint as follows:

**INTRODUCTION**

1.     Mr. Gonzalez is a pretrial detainee at the Cook County Jail. On May 7, 2020,

Mr. Gonzalez was brutally assaulted in an elevator at Cook County Jail that lacks any security

camera by Defendants Rodriguez, Rasic, and Duharkic, while being escorted—unarmed,

restrained and defenseless. The assault caused blood to stream down Mr. Gonzalez's face, smearing

onto the walls of the elevator and pooling on the ground.

**ANSWER:** Defendant admits that Plaintiff was a pretrial detainee at the Cook County Jail

on May 7, 2020. Defendant denies the remaining allegations in this paragraph.

2.     Defendant Chavez was present inside the elevator but did nothing to intervene.

Defendant Sheehan had been recording the escort on his body-worn camera, and he, too, could

have intervened, but he instead stepped away to let the assault happen before returning to the scene.

1

Defendants Sacuta, Carden, Duran, Stroh, Beyer, Contorno, Van Giesen, Krzeminski, and Filipiak were in the vicinity and could have intervened as well, but none made any effort to do so.

**ANSWER:** Defendant admits that Defendant Chavez was present inside the elevator but denies the remaining allegations in this paragraph.

3.      Mr. Gonzalez brings the claims set forth in this amended complaint pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of law, of Mr. Gonzalez's constitutional right to be free from excessive and unreasonable use of force pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.

**ANSWER:** Defendant admits that Plaintiff brings his claims under 42 U.S.C. § 1983 but denies any liability for any claim.

<u>**PARTIES**</u>

4.      Mr. Gonzalez is a resident of Cook County, Illinois, and a pretrial detainee at Cook County Jail. He is currently housed in Division 9. Mr. Gonzalez's claims in this action arise out of his detention at Cook County Jail.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

5.      Defendant Justo Rodriguez (#17897), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER:** Plaintiff does not identify what he considers to be the relevant time frame. Defendant admits the allegation as it pertains to May 5, 2020, and May 7, 2020, the only two dates referenced in Plaintiff's amended complaint.

6.      Defendant Damir Rasic (#17493), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER:** Plaintiff does not identify what he considers to be the relevant time frame. Defendant admits the allegation as it pertains to May 5, 2020, and May 7, 2020, the only two dates referenced in Plaintiff's amended complaint.

7. Defendant Alen Duharkic (#18248), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER:** Plaintiff does not identify what he considers to be the relevant time frame. Defendant admits the allegation as it pertains to May 5, 2020, and May 7, 2020, the only two dates referenced in Plaintiff's amended complaint.

8. Defendant John Chavez (#16361), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER:** Plaintiff does not identify what he considers to be the relevant time frame. Defendant admits the allegation as it pertains to May 5, 2020, and May 7, 2020, the only two dates referenced in Plaintiff's amended complaint.

9. Defendant Andrew Sacuta (#17496), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER:** Plaintiff does not identify what he considers to be the relevant time frame. Defendant admits the allegation as it pertains to May 5, 2020, and May 7, 2020, the only two dates referenced in Plaintiff's amended complaint.

10. Defendant John Carden (#17367), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER:** Plaintiff does not identify what he considers to be the relevant time frame. Defendant admits the allegation as it pertains to May 5, 2020, and May 7, 2020, the only two dates referenced in Plaintiff's amended complaint.

11.    Defendant Eliud Duran (#3214), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER:** Plaintiff does not identify what he considers to be the relevant time frame. With the exception that Defendant Duran was a sergeant, not a correctional officer, Defendant otherwise admits the allegation as it pertains to May 5, 2020, and May 7, 2020, the only two dates referenced in Plaintiff's amended complaint.

12.    Defendant Steven Stroh (#17808), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER:** Plaintiff does not identify what he considers to be the relevant time frame. Defendant admits the allegation as it pertains to May 5, 2020, and May 7, 2020, the only two dates referenced in Plaintiff's amended complaint.

13.    Defendant Timothy Beyer (#17914), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER:** Plaintiff does not identify what he considers to be the relevant time frame. Defendant admits the allegation as it pertains to May 5, 2020, and May 7, 2020, the only two dates referenced in Plaintiff's amended complaint.

14.    Defendant Douglas Contorno (#17467), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER:** Plaintiff does not identify what he considers to be the relevant time frame. Defendant admits the allegation as it pertains to May 5, 2020, and May 7, 2020, the only two dates referenced in Plaintiff's amended complaint.

15.    Defendant Justin Van Giesen (#16527), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER:** Plaintiff does not identify what he considers to be the relevant time frame. Defendant admits the allegation as it pertains to May 5, 2020, and May 7, 2020, the only two dates referenced in Plaintiff's amended complaint.

16.     Defendant Maciej Krzeminski (#17738), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER:** Plaintiff does not identify what he considers to be the relevant time frame. Defendant admits the allegation as it pertains to May 5, 2020, and May 7, 2020, the only two dates referenced in Plaintiff's amended complaint.

17.     Defendant William Filipiak (#17770), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER:** Plaintiff does not identify what he considers to be the relevant time frame. Defendant admits the allegation as it pertains to May 5, 2020, and May 7, 2020, the only two dates referenced in Plaintiff's amended complaint.

18.     Defendant Sergeant Sheehan (#3234), at all relevant times, was a Correctional Officer at Cook County Jail.

**ANSWER:** Plaintiff does not identify what he considers to be the relevant time frame. With the exception that Defendant Sheehan was a sergeant, not a correctional officer, Defendant otherwise admits the allegation as it pertains to May 5, 2020, and May 7, 2020, the only two dates referenced in Plaintiff's amended complaint.

19.     Defendant Thomas J. Dart is the Sheriff of Cook County, Illinois. Sheriff Dart oversees the Cook County Department of Corrections, its operations, and its employees. Sheriff Dart is responsible for training officers and for setting all policies and procedures at Cook County Jail. He is sued in his official capacity.

**ANSWER:** Defendant admits that Thomas J. Dart is the Sheriff of Cook County, Illinois. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

20. Defendant Cook County is joined in this action pursuant to *Carver v. Sheriff of LaSalle County,* 324 F.3d 947 (7th Cir. 2003).

**ANSWER:** Admitted.

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal questions) and § 1343 (civil rights actions).

**ANSWER:** Defendant admits the Court has subject matter jurisdiction over this action but denies he has any liability for any claim.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Mr. Gonzalez's claims occurred in this District.

**ANSWER:** Defendant admits that venue is proper but denies he has any liability for any claim.

## STATEMENT OF FACTS

I. **Mr. Gonzalez Is Brutally Assaulted By Officers In An Elevator In Division 9.**

**ANSWER:** Denied.

23. On May 7, 2020, Mr. Gonzalez was in the custody of the Cook County Sheriff's Department at Cook County Jail and housed in cell #1033, Tier 1F, Division 9.

**ANSWER:** Admitted.

24.     Around 10:22 a.m. on May 7 2020, Defendant Sacuta entered Mr. Gonzalez's cell, purportedly for the purpose of distributing COVID-19 masks, soap, and a lunch tray. At least four other officers stood outside of Mr. Gonzalez's cell as Defendant Sacuta entered.

**ANSWER:** Defendant admits that around 10:22 a.m. on May 7 2020, Officer Sacuta entered Plaintiff's cell to distribute COVID-19 masks, soap, and a lunch tray and that approximately four other officers stood outside the cell. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

25.     On information and belief, Defendant Sacuta in fact entered Mr. Gonzalez's cell to seek retaliation for an alleged incident two days earlier, on May 5, 2020. During that incident, Mr. Gonzalez had allegedly struck another officer, Garza, when Garza, another officer named Zamfirescu, and Defendant Sacuta approached Mr. Gonzalez's cell to perform a vitals check, in response to which Defendant Sacuta allegedly struck Mr. Gonzalez in the torso.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

26.     An altercation ensued after Defendant Sacuta entered Mr. Gonzalez's cell on May 7, 2020. Several of the officers who had been standing outside of Mr. Gonzalez cell entered at that time. In addition, approximately ten other officers came rushing toward Mr. Gonzalez's cell. In total, approximately fifteen officers were assembled in and around Mr. Gonzalez's cell shortly after the altercation broke out.

**ANSWER:** Defendant admits that on May 7, 2020, he responded to Plaintiff's cell in response to a radio call involving a battery to staff on Tier 1F in Division 9. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

27. Mr. Gonzalez was pulled out of his cell with his wrists cuffed behind his back and his legs shackled. Approximately four officers pushed Mr. Gonzalez's face against the wall next to his cell and conducted a pat-down search. Body-worn camera footage shows that there was no blood on Mr. Gonzalez's face at that time: [image omitted].

**ANSWER:** Defendant admits that Plaintiff was restrained in handcuffs and shackles and escorted out of his cell to a wall where a pat-down search was conducted. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

28. Body-worn camera footage further shows that there was no blood left on the wall against which Mr. Gonzalez's face was pressed while he was searched: [image omitted].

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

29. Mr. Gonzalez was then escorted by Defendants Rodriguez, Rasic, and Duharkic out of Tier 1F and to the dispensary. Mr. Gonzalez was escorted walking backwards, bent over at the waist at an almost 90-degree angle, with one officer holding his head down by placing a hand on the back of his neck, so that Mr. Gonzalez was facing the ground as he walked: [image omitted].

**ANSWER:** Defendant admits that he and Officers Rodriguez and Duharkic escorted Plaintiff out of Tier 1F, that Plaintiff was walking backwards, and that Plaintiff was facing the ground as he walked. Defendant denies the remaining allegations in this paragraph.

30. The body-worn camera footage does not show any blood dripping off of Mr. Gonzalez's face or blood on the ground as Mr. Gonzalez was escorted away.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

8

31.     Defendants Rodriguez, Rasic, and Duharkic then escorted Mr. Gonzalez, in the same position, down a hallway toward the elevator in Division 9. Defendant Sheehan walked with them, his body-worn camera activated, and called the elevator when they got there.

**ANSWER:** Defendant admits that he and Officers Rodriguez and Duharkic escorted Plaintiff toward the elevator in Division 9 and that Sergeant Sheehan walked with them, his body-worn camera activated, and called the elevator when they got there. Defendant denies the remaining allegations in this paragraph.

32.     On information and belief, there was (and still is) no security camera installed in the elevator in Division 9.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

33.     Once the elevator arrived, Defendants Rodriguez, Rasic, and Duharkic escorted Mr. Gonzalez inside the elevator and led him to the back right-hand corner, where they turned him around to face the corner and surrounded him. Defendant Chavez also entered the elevator, a step behind the others.

**ANSWER:** Defendant admits that he and Officers Rodriguez and Duharkic escorted Plaintiff inside the elevator and to the back right-hand corner and that Officer Chavez also entered the elevator. Defendant denies the remaining allegations in this paragraph.

34.     Once Defendants Rodriguez, Rasic, Duharkic, and Chavez and Mr. Gonzalez were inside the elevator, Defendant Sheehan turned to walk away.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

35.     On information and belief, Defendants Rodriguez, Rasic, Duharkic, Chavez, and Sheehan were aware that there was no security camera installed in the elevator, and no video camera present other than Defendant Sheehan's body-worn camera.

**ANSWER:** Denied.

36.     As Defendant Sheehan turned away from the elevator, his body-worn camera showed that there was no blood on the ground across which Mr. Gonzalez had just been escorted with his head down, facing the ground: [image omitted].

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

37.     Defendant Sheehan walked toward the room shown at the far left hand side of the above screenshot, where the other Defendant officers were stationed, purportedly to get Mr. Gonzalez's ID. Defendant Sheehan was away from the elevator for approximately 30 seconds.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

38.     While Defendant Sheehan was away from the elevator, and with no camera in sight, Defendants Rodriguez, Rasic, and Duharkic brutally attacked Mr. Gonzalez, including by kneeing and punching him in the face and head repeatedly, causing him to bleed uncontrollably.

**ANSWER:** Denied.

39.     Defendant Rodriguez saw that Mr. Gonzalez was bleeding and forcefully shoved Mr. Gonalez's head into the corner of the elevator. Blood streamed down Mr. Gonzalez's face as Defendants Rodriguez, Rasic, and Duharkic continued to beat him.

**ANSWER:** Denied.

40.     Defendant Chavez remained present in the elevator as Defendants Rodriguez, Rasic, and Duharkic assaulted Mr. Gonzalez, but he simply stood by, without making any effort to intervene or protect Mr. Gonzalez.

**ANSWER:** Denied.

41.     Defendant Sheehan came rushing back toward the elevator and entered. At that time, Defendants Rodriguez, Rasic, and Duharkic had Mr. Gonzalez surrounded and pushed up against the wall in the corner of the elevator, with his hands restrained behind his back.

**ANSWER:** Defendant admits that Sergeant Sheehan entered the elevator and that Plaintiff's hands were in restraints behind his back. Defendant denies the remaining allegations in this paragraph.

42.     With Defendant Sheehan inside the elevator, the door closed and the elevator ascended or descended.

**ANSWER:** Admitted.

43.     When the door opened Defendants Rodriguez, Rasic, and Duharkic escorted Mr. Gonzalez off in the same position as they had escorted him from his cell to the elevator. As Mr. Gonzalez exited the elevator, Defendant Sheehan's body-worn camera shows blood on the left side of Mr. Gonzalez's uniform. It also shows blood streaked in the corner of the elevator where Mr. Gonzalez had been standing and pooling at the floor: [image omitted].

**ANSWER:** Defendant admits that he and Officers Rodriguez and Duharkic escorted Plaintiff off the elevator in the same position they escorted him from his cell to the elevator. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

44.     After being escorted off the elevator, Mr. Gonzalez was taken to a holding area known as the bull pen, which has individual holding cells. Footage from the holding cell shows that Mr. Gonzalez's face and uniform were covered in blood: [image omitted].

**ANSWER:** Defendant admits that Plaintiff was taken to a holding cell after being escorted off the elevator. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

45.     Approximately twenty minutes later, Mr. Gonzalez was taken to the dispensary, where medical staff immediately called 911. Mr. Gonzalez was bleeding from the mouth and nose area. He had significant facial swelling, his right eye was swollen shut, he had multiple lacerations to his right eyebrow area, and he suffered an injury to his nose.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

46.     Mr. Gonzalez was placed on a backboard and in a cervical collar. He was then transported to Mount Sinai Hospital in Chicago via ambulance.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

47.     At Mount Sinai, Mr. Gonzalez was treated for acute blunt head and facial trauma. Mr. Gonzalez's right eye was swollen shut. Mr. Gonzalez's injuries also included a large parietal-temporal scalp hematoma, extensive swelling in his face and eye area, and multiple lacerations, facial abrasions, and bruises. One of the lacerations in Mr. Gonzalez's right eye area was repaired with sutures.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

48.     The above-described injuries caused, and continue to cause, Mr. Gonzalez significant pain and suffering. Mr. Gonzalez continues to suffer from blurred vision in his right eye, an ongoing injury to his nose, and frequent pain and discomfort.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

49.     As a pretrial detainee at Cook County Jail, Mr. Gonzalez must continue to interact with Defendants, causing him to fear that he will be subject to another officer assault in an elevator that does not have a security camera.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

50.     Following his treatment at Mount Sinai Hospital, Mr. Gonzalez received a bill in the amount of $1,006.00 for care rendered on May 7, 2020.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

## II.     **There Is A Widespread Practice At Cook County Jail Of Officers Using Elevators That Lack Security Cameras To Beat Detainees.**

**ANSWER:** Defendant has no knowledge of officers using elevators that lack security cameras to beat detainees. Defendant denies this allegation.

51.     The practice of using elevators that do not have security cameras, including the elevator in Division 9 where Mr. Gonzalez was assaulted, to beat detainees has a long, well-documented history at Cook County Jail. Those elevators are the few, if not only, places in Cook County Jail through which detainees are transported where there are no security cameras installed. On information and belief, officers at Cook County Jail take advantage of the fact that there are no cameras in certain elevators, using those spaces to assault detainees out of view.

**ANSWER:** Defendant has no knowledge of officers using elevators that lack security cameras to beat detainees. Defendant denies this allegation.

52. In recent years, Defendants Dart and Cook County have litigated and/or settled numerous lawsuits alleging that Cook County Jail officers assaulted detainees in elevators lacking security cameras, including the elevator where Mr. Gonzalez was assaulted. For example:

a. In *Crossley v. Dart,* No. 19-cv-8263 (N.D. Ill. filed Dec. 17, 2019), a Cook County Jail detainee alleged that officers took him and two other detainees into Division 9 segregation custody via elevator and, while in the elevator, the officers beat the plaintiff and other detainees in the head and midsection. The plaintiff was then led to another elevator where an officer said: "be cool, it's a camera on this one."

b. In *Jackson v. Stubenvoll,* No. 16-cv-05746 (N.D. Ill. filed May 31, 2016), a pretrial detainee at Cook County Jail alleged that an officer pushed him in an elevator in Division 9 and that the officer knew there was no camera in the elevator.

c. In *Hudson v. Preckwinkle,* No. 13-cv-8752 (N.D. Ill. filed Dec. 6, 2013), an expert witness testified that the term "elevator ride" is a term used at Cook County Jail to "describe a beating by correctional officers where there are no cameras." The expert further testified that his review of video footage at Cook County Jail led him to conclude that "elevator rides" were occurring at Cook County Jail. Regarding the elevator in Division 9, the former Unit Director for the Office of Professional Review at the Sheriff's Office testified: "There are no video cameras inside the elevator. We know that. Everybody else knows that." A Cook County Jail detainee testified: "[The elevator is] where they [the officers] do all their beating up at. . . . They take you to the elevator, where there are no cameras at."

d. In *Hudson,* the plaintiff alleged: "Officer 'D. Roach' beat [a detainee] during an 'elevator ride' after the two men had a verbal altercation. During that altercation, the officer threatened [the detainee] with an 'elevator ride.' A few hours later, Officer D. Roach and another officer came to [the detainee's] cell and forced him into the elevator. While in the elevator, the officers beat [the detainee], causing him a black eye, bruises, and swelling on his head."

e. In *Adkisson v. Dart,* No. 09-cv-4660 (N.D. Ill. filed Aug. 11, 2009), a pretrial detainee alleged that, after processing at Division 9, an officer escorted him in an elevator that did not have a camera and slapped him in the head. The detainee alleged that "when correctional officers wish to illegally punish and harm detainees they will escort those detainees through a special route which does not include video cameras and that this is a regular practice."

**ANSWER:** Defendant has no knowledge of officers using elevators that lack security cameras to assault detainees. Defendant denies this allegation. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

53.     The absence of a security camera in the elevator where Mr. Gonzalez was assaulted, and the practice of officers using that elevator to assault detainees, has also been documented in the media. For instance, a detainee explained in a 2019 article that "a lot of guys get physically assaulted in the elevator. There's cameras everywhere except the elevator in Division 9."[1]

**ANSWER:** Defendant has no knowledge of officers using elevators that lack security cameras to assault detainees. Defendant denies this allegation. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

54.     On information and belief, Defendant Dart and others with relevant policymaking authority at Cook County Jail are aware of the absence of security cameras in certain elevators at Cook County Jail, including the elevator where Mr. Gonzalez was assaulted, as well as the practice of officers beating detainees in those elevators, but have not taken any steps to install security cameras and have allowed the practice to flourish.

**ANSWER:** Defendant has no knowledge of officers using elevators that lack security cameras to beat detainees. Defendant denies this allegation. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

55.     The practice of officers beating detainees in elevators without security cameras has also flourished due to Defendant Dart's failure to adequately train and supervise officers with

---

[1] Valerie Kiebala, *Sheriff Tom Dart says Cook County Jail is the first to end solitary confinement. Here's what it looks like from the inside.* THE CHICAGO REPORTER (Dec. 17, 2019), https://www.chicagoreporter.com/sheriff-tom-dart-says-cook-county-jail-is-the-first-to-end-solitary-confinement-heres-what-it-looks-like-from-the-inside/.

respect to the appropriate use of force, including inside of the elevators at Cook County Jail to ensure the adequate supervision of detainees and officers and to ensure the safety of detainees.

**ANSWER:** Defendant has no knowledge of officers using elevators that lack security cameras to beat detainees. Defendant denies this allegation. Defendant lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in this paragraph.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

56.     Mr. Gonzalez has exhausted all available administrative remedies under the Prison Litigation Reform Act.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

## COUNT I – 42 U.S.C. § 1983 CLAIM FOR EXCESSIVE FORCE
### (Against Defendants Rodriguez, Rasic, and Duharkic)

57.     Mr. Gonzalez incorporates by reference paragraphs 1 through 56 as if fully set forth herein.

**ANSWER:** Defendant incorporates by reference his answers to paragraphs 1 through 56 as if fully set forth herein.

58.     Mr. Gonzalez had the right to be free from excessive and unreasonable use of force pursuant to the Fourth and Fourteenth Amendments to the United States Constitution.

**ANSWER:** Defendant admits that Plaintiff had the right to be free from excessive and unreasonable use of force pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Defendant denies Plaintiff's constitutional rights were violated.

59.     In violation of his constitutional rights, Defendants Rodriguez, Rasic, and Duharkic assaulted Mr. Gonzalez in an elevator in Division 9 of Cook County Jail on May 7, 2020, including by repeatedly kneeing and punching him in the head and face, without provocation from Mr.

16

Gonzalez, who was unarmed, restrained, and defenseless. Defendants' use of force was thus excessive and unreasonable.

**ANSWER:** Denied.

60.     Defendants Rodriguez, Rasic, and Duharkic used excessive and unreasonable force against Mr. Gonzalez intentionally and willfully, in retaliation for the altercations in Mr. Gonzalez's cell that preceded the elevator incident.

**ANSWER:** Denied.

61.     Defendants' use of force violated Mr. Gonzalez's constitutional right to be free from excessive and unreasonable use of force under clearly established law.

**ANSWER:** Denied.

62.     As a direct and proximate result of Defendants Rodriguez, Rasic, and Duharkic's excessive and unreasonable force, Mr. Gonzalez has suffered significant pain, injury, and emotional distress.

**ANSWER:** Denied.

63.     At all times relevant, Defendants Rodriguez, Rasic, and Duharkic acted under color of state law and in the course and scope of their employment.

**ANSWER:** Plaintiff does not identify what he considers to be the relevant time frame or what acts this paragraph refers to. Defendant did not act in the manner Plaintiff alleges, so Defendant denies he "acted" under color of State law or in the scope of his employment as alleged by Plaintiff.

### COUNT II – 42 U.S.C. § 1983 CLAIM FOR FAILURE TO INTERVENE
**(Against Defendants Chavez, Sacuta, Carden, Duran, Stroh, Beyer, Contorno, Van Giesen, Krzeminski, Filipiak, and Sheehan)**

64.     Mr. Gonzalez incorporates by reference paragraphs 1 through 63 as if fully set forth herein.

**ANSWER:** Defendant incorporates by reference his answers to paragraphs 1 through 63 as if fully set forth herein.

65.     Defendant Chavez was present in the elevator when Defendants Rodriguez, Rasic, and Duharkic were using excessive and unreasonable force against Mr. Gonzalez on May 7, 2020, and was aware that Mr. Gonzalez was being actively assaulted.

**ANSWER:** Denied.

66.     Defendant Chavez had a realistic opportunity to intervene to prevent the violations of Mr. Gonzalez's constitutional rights, either by physically intervening or by insisting that his fellow officers stop assaulting Mr. Gonzalez.

**ANSWER:** Denied.

67.     Instead of taking any steps to intervene, however, Defendant Chavez stood by and witnessed the assault of Mr. Gonzalez play out.

**ANSWER:** Denied.

68.     Defendant Sheehan was also in the vicinity at the time of Mr. Gonzalez's assault and had a realistic opportunity to intervene to prevent the assault, including by remaining present in the elevator with his body-worn camera activated. Instead of taking any steps to intervene, however, on information and belief, Defendant Sheehan, deliberately left the elevator so that Defendants Rodriguez, Rasic, and Duharkic could assault Mr. Gonzalez without being caught on camera. Defendant Sheehan then deliberately stayed down the hall for approximately 30 seconds while the assault took place before rushing back to the elevator to restore calm.

**ANSWER:** Denied.

69.     Defendants Sacuta, Carden, Duran, Stroh, Beyer, Contorno, Van Giesen, Krzeminski, and Filipiak were in the vicinity at the time of Mr. Gonzalez's assault as well. They were down the hallway from the elevator and could realistically have arrived there within a few seconds. The elevator door was open, so they could have heard Mr. Gonzalez being assaulted inside. Furthermore, on information and belief, they knew or had reason to know that Mr. Gonzalez would be assaulted in the elevator once Defendant Sheehan left the scene. Instead of taking any steps to intervene at any time during the assault, however, they stood by and let the assault play out.

**ANSWER:** Denied.

70.     Defendants' failures to intervene violated Mr. Gonzalez's constitutional right to be free from excessive and unreasonable use of force under clearly established law.

**ANSWER:** Denied.

71.     As a result of Defendants' failures to intervene, Mr. Gonzalez's constitutional rights were violated, causing Mr. Gonzalez to suffer significant pain, injury, and emotional distress.

**ANSWER:** Denied.

72.     At all times relevant, Defendants Chavez, Sacuta, Carden, Duran, Stroh, Beyer, Contorno, Van Giesen, Krzeminski, Filipiak, and Sheehan acted under color of state law and in the course and scope of their employment.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

**COUNT III – 42 U.S.C. § 1983 CLAIM PURSUANT TO _MONELL_**
**(Against Defendant Dart in His Official Capacity as Cook County Sheriff and Defendant Cook County for Indemnification Purposes Only)**

73.     Mr. Gonzalez incorporates by reference paragraphs 1 through 72 as if fully set forth herein.

**ANSWER:** Defendant incorporates by reference his answers to paragraphs 1 through 72 as if fully set forth herein.

74.     The violations of Mr. Gonzalez's constitutional rights, his damages, and the conduct of the individual Defendants were directly and proximately caused by a persistent and widespread practice at Cook County Jail of officers beating detainees in the elevator where Mr. Gonzalez was assaulted and others that lack security cameras.

**ANSWER:** Denied.

75.     The violations of Mr. Gonzalez's constitutional rights, his damages, and the conduct of the individual Defendants were further directly and proximately caused by a persistent and widespread practice at Cook County Jail of facilitating the practice of officers beating detainees in elevators that lack security cameras, including by:

a.  Failing to establish and/or implement policies, practices, and procedures to ensure adequate supervision of detainees and officers at Cook County Jail, including by failing to install security cameras in all elevators that are used to transport detainees;

b.  Turning a blind eye to allegations, reports, and other news of incidents involving officers beatings detainees in elevators that lack security cameras;

c.  Failing to investigate or discipline officers who reportedly beat detainees in elevators that lack security cameras;

d.  Failing to properly train and supervise officers to avoid the use of excessive force, including when transporting detainees in elevators; and

e. Failing to establish and/or implement policies, practices, and procedures to ensure that detainees at Cook County Jail are free from excessive force.

**ANSWER:** Denied.

76.     At all times relevant, Defendant Dart possessed knowledge of the aforementioned deficiencies in the policies, practices, customs, and procedures at Cook County Jail, including because of the history of litigation and media coverage about officers beating detainees in elevators that lack security cameras. Yet Defendant Dart approved and/or deliberately turned a blind eye to these deficiencies, allowing the deficiencies to continue.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.

77.     As a direct and proximate result of these widespread and persistent practices, Mr. Gonzalez's constitutional rights were violated and he was assaulted by the individual Defendants, causing Mr. Gonzalez to suffer significant injuries, pain, suffering, and emotional distress.

**ANSWER:** Denied.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Gonzalez respectfully asks that this Court enter judgment in his favor and against all Defendants on Counts I, II, and III and award all appropriate damages in an amount to be determined at trial, including compensatory and punitive damages, plus prejudgment interest, as well as attorneys' fees, costs of suit, and any further relief that this Court deems just and proper.

**ANSWER:** Defendant admits Plaintiff makes a request for relief but denies Plaintiff is entitled to any relief.

## **JURY DEMAND**

Plaintiff demands a jury trial on all issues so triable.

**ANSWER:** Defendant admits Plaintiff demands a jury trial but denies any wrongdoing.

## AFFIRMATIVE DEFENSES

Further answering Plaintiff's amended complaint, Defendant alleges the following separate affirmative defenses against Plaintiff:

### I.  Qualified Immunity

1.      Defendant did not cause the deprivation of any of Plaintiff's constitutional rights.

2.      Defendant's conduct was at all times objectively reasonable and did not violate any of Plaintiff's clearly established constitutional rights.

3.      Accordingly, Defendant is entitled to the defense of qualified immunity.

### II.  Failure to Mitigate

4.      To the extent Plaintiff claims any damages against Defendant, Plaintiff had a duty to mitigate those damages. *Wells v. City of Chicago*, No. 07 C 3372, 2009 WL 528307, at *8 (N.D. Ill. Feb. 25, 2009).

5.      Without waiving his denials to Plaintiff's allegations and to the extent Plaintiff has failed to mitigate his damages, any award of damages must be reduced or eliminated for his failure to mitigate.

### III.  Plaintiff's Willful and Wanton Conduct

6.      To the extent any injuries or damages claimed by Plaintiff were proximately caused, in whole or in part, by negligent, willful, wanton, and/or other wrongful conduct on the part of Plaintiff, any verdict or judgment obtained by Plaintiff must be reduced by application of the principles of comparative fault in an amount commensurate with the degree of fault attributed to Plaintiff by the jury in the case.

### IV. Additional Affirmative Defenses

7.     Defendant reserves the right to assert additional affirmative defenses as they become known through the course of litigation.

### <u>JURY DEMAND</u>

With regard to any issue that may be appropriately heard by a jury in this cause of action, Defendant hereby demands a jury trial.

WHEREFORE, based on the foregoing, Defendant, DAMIR RASIC, denies that Plaintiff is entitled to any compensatory or punitive damages, prejudgment interest, attorneys' fees, costs of suit, or any other relief. Defendant prays that this Honorable Court grant judgment in his favor and against Plaintiff on all aspects of his amended complaint and further requests that this Honorable Court grant judgment of Defendant's fees, costs, and such other relief that this Court deems just and appropriate.

Respectfully submitted,

EILEEN O'NEILL BURKE
State's Attorney of Cook County

Dated: June 11, 2025

/s/ *Samuel D. Branum*
Special Assistant State's Attorney

Monica Burkoth (burkothm@jbltd.com)
Samuel D. Branum (branums@jbltd.com)
Johnson & Bell, Ltd.
33 W. Monroe, Ste. 2700
Chicago, Illinois 60603
(312) 372-0770