**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHRISTIAN A. GONZALEZ, <br><br> Plaintiff, <br><br> vs. <br><br> JUSTO RODRIGUEZ (#17897), DAMIR RASIC (#17493), ALEN DUHARKIC (#18248), JOHN CHAVEZ (#16361), ANDREW SACUTA (#17496), JOHN CARDEN (#17367), ELIUD DURAN (#3214), STEVEN STROH (#17808), TIMOTHY BEYER (#17914), DOUGLAS CONTORNO (#17467), JUSTIN VAN GIESEN (#16527), MACIEJ KRZEMINSKI (#17738), WILLIAM FILIPIAK (#17770), SERGEANT SHEEHAN (#3234), THOMAS J. DART, and COOK COUNTY, <br><br> Defendants. | No. 21 CV 6243 <br><br> Hon. Jeffrey I. Cummings |

**PLAINTIFF'S MOTION TO COMPEL OPR-RELATED DISCOVERY**

Plaintiff Christian A. Gonzalez, by his undersigned, appointed, pro bono attorneys, hereby moves the Court pursuant to Federal Rules of Civil Procedure 34(a)(1), 37(a)(1), and 37(a)(3)(B)(iv) to compel Defendant Thomas J. Dart (the "Sheriff's Office") to produce (1) video footage related to 18 incidents alleging assaults by correctional officers on detainees in the Division 9 elevators of the Cook County Jail that the Office of Professional Review ("OPR") determined were unsubstantiated and (2) documents related to the Sheriff's Office's investigation into two incidents alleging assaults by correctional officers on detainees in the Division 9 elevators, for which no OPR files exist.

1

**INTRODUCTION**

Mr. Gonzalez is again required to file a motion to compel production of discovery essential to his *Monell* claim, which alleges a custom or practice at the Cook County Jail of maintaining the elevators in Division 9 without security cameras so that correctional officers can assault detainees in them with impunity. Mr. Gonzalez previously moved to compel production of grievances alleging such assaults, and the OPR's corresponding investigative files. The Court largely granted that motion. It ordered the Sheriff's Office to produce responsive OPR files for 2020 and directed the parties to work cooperatively regarding the production of OPR files corresponding to responsive incidents Mr. Gonzalez identified from a set of 50,000 grievances for the years 2017-2019, which the Sheriff's Office produced while the first motion to compel was pending.

This motion concerns two limited requests Mr. Gonzalez made following his review of the grievances and OPR file productions, which the Sheriff's Office has refused:

*First*, Mr. Gonzalez seeks video footage related to 18 incidents involving alleged assaults by correctional officers against detainees in Division 9 elevators, which the OPR determined were unsubstantiated. Based on a comparison of the video footage of his own assault[1] against the OPR's assessment of that footage—specifically, that there was no evidence of officer misconduct in the elevator—Mr. Gonzalez submits that the OPR's assessments are unreliable. Accordingly, Mr. Gonzalez made a limited request for the video footage for 18 similar incidents so that he can make his own assessment of that footage and the underlying events.

The Sheriff's Office has refused to produce the footage, citing the timing of Mr. Gonzalez's request. As set forth below, the timing of the request is a product of the Sheriff's Office's own

---

[1] Screenshots from this video footage are included in Mr. Gonzalez's amended complaint. (*See* ECF No. 84 ¶¶ 27-29, 36, 43-44.)

conduct—including its refusal to produce *any* grievances until July 2025, and the balance of the OPR files in late October 2025. Mr. Gonzalez's request is based on his review of those productions, from which he was able to identify the limited set of specific incidents for which he seeks video footage.

*Second*, Mr. Gonzalez seeks documents related to the Sheriff's Office's investigation of two incidents involving the use of force by correctional officers against detainees in Division 9 elevators. The Sheriff's Office informed Mr. Gonzalez that there are no OPR investigative files for these incidents. However, Mr. Gonzalez understands that other investigative files exist. For one of the two incidents, the Sheriff's Office stated that its Use of Force Review Unit conducted an investigation and, with respect to the other incident, Mr. Gonzalez understands it is the policy of the Sheriff's Office to timely investigate every grievance filed. The Sheriff's Office has refused to produce the requested documents, citing the Court's Order directing the production of "OPR" files specifically, not any other type of investigative file. (ECF No. 207.) This, too, is a product of the Sheriff's Office's own conduct—specifically, its representation that the OPR is responsible for investigating incidents involving alleged physical misconduct by correctional officers. If no OPR file exists for two such incidents, the Sheriff's Office should produce the other investigative files that do exist.

For these reasons, the Court should compel the Sheriff's Office to produce (1) video footage related to 18 incidents alleging assaults in Division 9 elevators the OPR determined were unsubstantiated, and (2) documents (including video footage) related to its investigations of the two incidents for which no OPR files exist.

3

## BACKGROUND

**A.      Background Relevant To All Issues Raised In This Motion.**

In November 2024, Mr. Gonzalez moved to compel the production of grievances alleging assaults by correctional officers against detainees in the Division 9 elevators of the Cook County Jail.  (ECF No. 150 at 1-2, 9-14.)  In that motion, Mr. Gonzalez recounted his efforts to obtain these grievances from the Sheriff's Office over the course of approximately 17 months.  (*Id.* at 3-8.)  Such grievances are core to Mr. Gonzalez's *Monell* claim, which requires him to establish a practice or custom of similar constitutional violations against other detainees at the Jail.  *See generally Monell v. Dep't of Soc. Svcs.*, 436 U.S. 658 (1978).

In its response—and despite consistent objections by the Sheriff's Office that reviewing boxes of paper grievances would be unduly burdensome and numerous meet and confers on the subject—the Sheriff's Office revealed for the first time that grievances alleging misconduct by correctional officers are "forwarded" to the Office of Professional Review, creating an electronic record of the grievance and the OPR's investigation.  (*See* ECF No. 156 at 6; ECF No. 159 at 2, 4.)  Mr. Gonzalez also learned from the Sheriff's Office's submissions in connection with his first motion to compel that the Sheriff's Office was already in possession of a repository of electronically scanned grievances, consisting of all grievances filed at the Jail between 2017 and 2019 (approximately 50,000 grievances total), from another civil action, *Henneberg v. Dart*, 19-cv-7380 (N.D. Ill.) (the "*Henneberg* grievances").  (ECF No. 156 at 11; ECF No. 174 at 2; ECF No. 181 at 1-4.)  Soon thereafter, while Mr. Gonzalez's motion to compel remained pending, the Sheriff's Office produced the *Henneberg* grievances to Mr. Gonzalez.  (ECF No. 207.)

On July 30, 2025, the Court entered an Order directing the Sheriff's Office to produce responsive OPR files for the year 2020 and that "[i]f plaintiff determines from his review of the

*Henneberg* grievances that further narrowed requests for specific OPR files from 2017−2019 may be appropriate, the parties shall meet and confer in an attempt to agree regarding such supplemental production." (*Id.*)

Mr. Gonzalez subsequently reviewed the 50,000 *Henneberg* grievances (approximately 145,051 pages) and requested OPR files for fewer than 40 grievances—that is, for less than 0.1% of all the grievances reviewed. The Sheriff's Office produced OPR files in response to these requests on October 7 and October 30, 2025.

**B.      Issue #1: Video Footage Discussed And Relied Upon In 18 OPR Files.**

The first issue addressed in this motion concerns Mr. Gonzalez's request for video footage related to 18 grievances alleging assaults by correctional officers in Division 9 elevators. The OPR investigated these grievances, including reviewing video footage, and determined the allegations were unsubstantiated and the files should be closed.

This is exactly what happened with Mr. Gonzalez's grievance, in which he alleged that he was assaulted by correctional officers in the elevator in Division 9. The OPR investigated, including reviewing video footage, and reported the following:



(Ex. A at CCSAO GONZALEZ 000186-187.)

. (*Id.* at CCSAO GONZALEZ 000187.)

The body-worn camera footage—which was produced in discovery by the Sheriff's Office—tells a very different story, as set forth in the amended complaint. (ECF No. 84.) The footage shows that once Mr. Gonzalez was escorted inside the elevator in which he was assaulted,

Sergeant Michael Sheehan, the only person wearing a body-worn camera, walked away. (*Id.* ¶¶ 32-35.) Sergeant Sheehan was away from the elevator for approximately 30 seconds, before rushing back toward the elevator in response to audible shouting coming from the elevator. (*See id.* ¶¶ 37, 41; *see also* ECF 132-3 "Elevator Video".) Following Sergeant Sheehan's return to the elevator, the body-worn camera footage shows blood on Mr. Gonzalez's face and clothes, and blood streaked down the corner of the elevator where Mr. Gonzalez had been standing and pooling on the floor. (ECF No. 84 ¶¶ 42-43.) None of this detail—all of which corroborates Mr. Gonzalez's allegations in his grievance—is reflected in the corresponding OPR file.

Given that the OPR files corresponding to the 18 grievances alleging similar incidents determined, as in Mr. Gonzalez's case, that the assault allegations were unsubstantiated, Mr. Gonzalez made a limited request for the video footage the OPR reviewed in its investigation of the 18 grievances. (Ex. B at 3-5, Feb. 6, 2026 Email from C. Lopez.) Video footage is cited, described, and relied upon throughout the OPR files. Mr. Gonzalez seeks to review the video footage to determine whether, as with his own case, the OPR's description of the video footage is not complete and accurate, or if the OPR's conclusions are not supported by the footage. The Sheriff's Office has refused to produce the video footage. (Ex. B at 1-2, Mar. 2, 2026 Email from S. Branum.)

### C. Issue #2: Documents Related To Investigation Of Two Responsive Incidents For Which The Sheriff's Office Has Represented There Is No OPR File.

The second issue addressed in this motion concerns two incidents involving alleged assaults by correctional officers against detainees in Division 9 elevators for which Mr. Gonzalez requested OPR files—one involving Mr. █████████ and one involving Mr. █████████. Mr. Gonzalez did not receive the OPR files because, as the Sheriff's Office has represented, no OPR files for these incidents were located. However, Mr. Gonzalez understands the Sheriff's

6

Office conducted some other investigation into these incidents, either through the Use of Force Review Unit or another investigative process. Mr. Gonzalez made a limited request for documents related to these investigations (including video footage), which the Sheriff's Office has refused to provide.

███████████ *Incident.* One of the OPR files produced on October 7, 2025 (related to a grievance filed by detainee Mr. ████████████), contains a letter referencing an incident on April 28, 2017 involving a different detainee, Mr. ██████████, " ████████████████████████ ████████████████████████████████████ " (Ex. C (Cook County DEFs 004525).)

On October 29, 2025, Mr. Gonzalez requested production of the ████ OPR file and offered to meet and confer. (Ex. D at 4-5, Oct. 29, 2025 Email from K. Leskovac.) On December 19, 2025, the Sheriff's Office indicated it was looking into the request. (Ex. D at 1, Dec. 19, 2025 Email from S. Branum.) On February 6, 2026, Mr. Gonzalez again requested production of the ████ OPR file and offered to meet and confer. (Ex. B at 3-5, Feb. 6, 2026 Email from C. Lopez.) On February 12, 2026, counsel for the Sheriff's Office stated: "The use of force was deemed reasonable by the Use of Force Review Unit. The Sheriff's Office did not find an OPR file for Incident DIV9-2017-7082." (Ex. B at 3, Feb. 12, 2026 Email from S. Branum.) After learning there was no ████ OPR file, Mr. Gonzalez requested production of all documents (including video footage) related to the Use of Force Review Unit's conclusion that the use of force against Mr. ████ was reasonable and again offered to meet and confer. (Ex. B at 2-3, Feb. 17, 2026 Email from C. Lopez.) The Sheriff's Office refused to produce these documents.

███████████ *Incident.* One of the OPR files Mr. Gonzalez requested on September 30, 2025, was the OPR file associated with a November 19, 2017 grievance filed by detainee Mr.

██████████ alleging he was assaulted by a correctional officer in the Division 9 elevators. (Ex. E.)  On December 18, 2025, counsel for Mr. Gonzalez informed counsel for the Sheriff's Office they were unable to locate the ███████ OPR file in the Sheriff's Office's productions and requested its production.  (Ex. D at 2, Dec. 18, 2025 Email from C. Lopez.)  In response, counsel for the Sheriff's Office directed Mr. Gonzalez to an OPR file associated with an entirely different grievance, filed by Ms. ████████, "because that is the grievance that was forwarded to OPR."  (Ex. D at 7, attachment to Dec. 19, 2025 Email from S. Branum.)  On February 6, 2026, counsel for Mr. Gonzalez again requested the ██████ OPR file and offered to meet and confer. (Ex. B at 3-5, Feb. 6, 2026 Email from C. Lopez.)  On February 12, 2026, counsel for the Sheriff's Office stated: "The Department of Inmate Services sent an email to OPR for '██████, C 2017x18833,' but attached to the email was the grievance for '[ ] ██████, S████ 2017x18828[.]' . . . We produced the OPR file for the grievance that was sent to OPR."  (Ex. B at 3, Feb. 12, 2026 Email from S. Branum.)  On February 17, 2026, Mr. Gonzalez's counsel asked counsel for the Sheriff's Office to explain if Mr. ███████'s grievance had been investigated by the OPR and again offered to meet and confer.  (Ex. B at 2-3, Feb. 17, 2026 Email from C. Lopez.) On March 2, 2026, counsel for the Sheriff's Office stated that "there is no OPR file for ████████." (Ex. B at 1, Mar. 2, 2026 Email from S. Branum.)  Accordingly, Mr. Gonzalez requested production of documents (including video footage) related to any other investigation into Mr. ████████'s grievance.  The Sheriff's Office refused to produce these documents.

**D.      Rule 37.2 Efforts**

Pursuant to Local Rule 37.2, counsel for Mr. Gonzalez and counsel for the Sheriff's Office met and conferred in good faith regarding the issues raised in this motion.  These efforts include

months of email correspondence, described above, as well as two telephone conferences on March 9, 2026 at 11:00 a.m., and March 13, 2026, at 1:20 p.m. The parties have reached an impasse.

Plaintiff's counsel contacted counsel for the Sheriff's Office regarding a proposed briefing schedule for this motion, as required by this Court's Standing Order. Counsel for the Sheriff's Office stated that the Sheriff's Office requests a stay of briefing on this motion until the parties have exhausted settlement discussions. As Plaintiff has previously indicated, Plaintiff does not oppose discussing settlement with Defendants and Plaintiff is prepared to move forward with a global settlement conference before the assigned Magistrate Judge. (*See* ECF No. 232 at 1; ECF No. 233 ¶ 5.) Defendants, however, will not commit to participating in a settlement conference at this time. Plaintiff proposes a briefing schedule of three weeks for the Sheriff's Office's response and two weeks for Plaintiff's reply, but, as before, defers to the Court on the sequencing and timing of these matters.

### E.  Current Case Schedule

Following a status conference on December 19, 2025, the Court set a February 20, 2026 deadline for the Sheriff's Office and Defendant Sheehan to file their motion for summary judgment on the statute of limitations and stayed all expert discovery pending the Court's resolution of that motion. (ECF No. 222.) Defendants' deadline to file their motion for summary judgment on the statute of limitations was extended multiple times, most recently to March 20, 2026. (ECF No. 230.) On March 20, 2026, instead of filing their motion for summary judgment on the statute of limitations, Defendants moved to stay briefing on their motion for summary judgment, which the Court granted. (ECF Nos. 233, 234.) Expert discovery remains stayed. (ECF No. 230.)

**ARGUMENT**

"The Federal Rules of Civil Procedure require that parties have access to all relevant information in advance of trial so that they and the trier of fact can arrive at soundly based judgments." *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 2017 WL 5890923, at *2 (N.D. Ill. Nov. 29, 2017). Under Rule 26, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "The party opposing discovery bears the burden of showing why it should be disallowed." *Belcastro v. United Airlines, Inc.*, 2019 WL 1651709, at *4 (N.D. Ill. Apr. 17, 2019). Pursuant to Rule 37(a), "[a] party may file a motion to compel . . . whenever another party fails to respond to a discovery request or when its response is insufficient." *Yorktown Indus., Inc. v. Aster Graphics, Inc.*, 2023 WL 6541317, at *1 (N.D. Ill. Oct. 5, 2023) (Cummings, M.J.). "Courts have broad discretion in resolving such discovery disputes and do so by adopting a liberal interpretation of the discovery rules." *Id.*

**I.     The Court Should Compel The Sheriff's Office To Produce Video Footage Related To The 18 Similar Incidents Identified By Mr. Gonzalez That The OPR Determined Were Unsubstantiated.**

The Court should compel the Sheriff's Office to produce the video footage related to the 18 similar incidents Mr. Gonzalez has identified, which the OPR determined were unsubstantiated.

The Seventh Circuit has instructed that a *Monell* plaintiff's need to show a practice or custom renders his "demands for broad discovery into other inmates' experiences . . . undeniable." *Hildreth v. Butler*, 960 F.3d 420, 426, 432 (7th Cir. 2020) (Hamilton, J. dissenting); *see Awalt v. Marketti*, 2012 WL 6568242, at *3 (N.D. Ill. Dec. 17, 2012) ("District courts addressing discovery-related disputes in cases involving *Monell* claims have routinely recognized that such claims often require a broad and substantial amount of discovery that would not be involved if the plaintiff sued

10

only the individuals directly involved in the deprivation of his rights."). In this vein, courts in this District consistently allow follow-up discovery of material underlying investigative reports and/or summaries concerning the experiences of other inmates. *See Lymon v. Chamberlain*, 2020 WL 6940985, at \*3-4 (N.D. Ill. Nov. 24, 2020) (ordering production of documents underlying reports regarding medical care provided to IDOC inmates, as part of *Monell* discovery); *Arsberry v. Wexford Health Sources, Inc.*, 2021 WL 5232733, at \*4-6 N.D. Ill. (Nov. 10, 2021) (same, describing documents concerning other inmates' medical care and their experiences with the alleged unconstitutional policies as essential to the plaintiff's *Monell* claim).

And in a similar civil rights context, another court in this District held that discovery of the documents underlying a company's investigative summaries of racial discrimination claims was warranted where there was a concern that the summaries were "insufficient and unreliable." *Perry v. Illinois Cent. R.R. Co.*, 2014 WL 10742632, at \*3 (N.D. Ill. Nov. 6, 2014) (a Section 1981 context). In *Perry*, the plaintiff sued his employer for racial discrimination and harassment and sought the production of documents related to other similar complaints at his workplace. *Id.* at \*1-3. The defendant company produced investigative summary documents describing the subject matter, locations, and outcomes of its investigations of such discrimination complaints, including whether the complaint was "substantiated" or "unsubstantiated." *Id.* at \*3. The plaintiff then sought the underlying documents used to produce those summaries and investigative determinations. *Id.* The court ordered the defendant to produce the underlying documents, stressing that the plaintiff had identified "certain holes and discrepancies" in the investigative summaries. *Id.*

Mr. Gonzalez's case is much the same. As outlined above, ███████████████████

██████████████████████████████████████████████████████

████████████████████████. (Ex. A at CCSAO GONZALEZ 000186-187.) But the video footage itself tells a different story. (*See, e.g.*, ECF No. 84 at ¶¶ 27-29, 36, 43-44; *see also* ECF 132-3 "Elevator Video".) Much like the "holes and discrepancies" the *Perry* court underscored when it required the defendant to produce the underlying material, Mr. Gonzalez requires the video footage to assess if the OPR's determinations that the 18 grievances alleging assaults in the Division 9 elevators were unsubstantiated are similarly flawed.[2]

The Sheriff's Office has refused to produce any of the requested video footage, based on its incorrect assertion that fact discovery is closed. Fact discovery related to the OPR files remains open. (*E.g.*, ECF No. 150 at 3-7; ECF No. 159 at 2, 4-5; *see generally* ECF No. 174.) Crucially, Mr. Gonzalez's request for video footage derives from his review of the grievances and related OPR files. The Sheriff's Office refused to produce *any* grievances until July 2025—long after what it now incorrectly asserts was the close of fact discovery in January 2025. (*See* ECF No. 232 at 5.) Notably, the Sheriff's Office made its July 2025 production of the *Henneberg* grievances *voluntarily*—while Mr. Gonzalez's first motion to compel remained pending. In short, the Sheriff's Office strategically delayed its production of grievances far beyond what it now incorrectly asserts was the close of fact discovery and now seeks to use that against Mr. Gonzalez.

In the ordinary course of discovery, a party is entitled to make follow-up requests based on what it learns in discovery. The Sheriff's Office should not be permitted to avoid a single, tailored follow-up request because it delayed producing the "first thread" in Mr. Gonzalez's investigation of his *Monell* claim—*i.e.*, the grievances that enabled him to identify similar incidents and detainees in the first instance—until July 2025 (more than two years after Mr. Gonzalez served his

---

[2] *Schroeder v. Menard, Inc.*, 2014 WL 3084725, at *3–4, 7 (N.D. Ind. July 7, 2014), although in a non-*Monell* context, is also instructive. There, the court ordered production of video footage relied on by insurance claims adjuster to make a benefits determination report.

12

RFP No. 8 in June 2023). Mr. Gonzalez would have been unable to request the video footage associated with these 18 incidents before he had the grievances because he did not have the relevant detainee names or incidents. And Mr. Gonzalez requested the video footage after reviewing the OPR files *because* the OPR determined that the grievances were unsubstantiated, which Mr. Gonzalez did not know before reviewing the OPR files.[3]

Accordingly, the Court should compel the Sheriff's Office to produce all video footage related to the 18 incidents.

## II.     The Court Should Compel The Sheriff's Office To Produce Documents Related To Investigations Of The ▮▮▮▮ And ▮▮▮▮▮ Incidents.

The Court should also compel the Sheriff's Office to produce documents (including video footage) related to its investigations into the incidents involving Mr. ▮▮▮▮ and Mr. ▮▮▮▮▮ which concern assaults by correctional officers in the Division 9 elevators. This limited set of materials is obviously relevant to Mr. Gonzalez's *Monell* claim, which the Sheriff's Office has never disputed. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 655 (7th Cir. 2021) (explaining that establishing a *Monell* "practice or custom" means "show[ing] that the defendant government … treated other, similarly situated [detainees] in similar unconstitutional ways"). And the Sheriff's Office has never asserted any undue burden. *See Sols. Team v. Oak Street Health, MSO, LLC*, 2021 WL 3022324, at *4 (N.D. Ill. July 16, 2021) (quoting *Annie Oakley Enter. Inc.*

---

[3] Any concerns about timing ring especially hollow given the status of the case schedule, where briefing on Defendants' "forthcoming" motion for summary judgment on the statute of limitations has been stayed at Defendants' request and expert discovery is stayed pending the Court's resolution of the "forthcoming" motion for summary judgment on the statute of limitations. (ECF Nos. 233, 234.) Defendants have sought to delay all further litigation of this matter to discuss settlement. (ECF No. 232 at 1-2; ECF No. 233 at ¶¶ 3-5.) But, while Mr. Gonzalez has repeatedly indicated he is ready to participate in a settlement conference, Defendants continue to seek delay in deciding whether to even participate in a settlement conference. (*See id.*)

*v. Amazon.com, Inc.*, 2020 WL 4571742, at *5 (S.D. Ind. Aug. 7, 2020)) ("A 'party resisting discovery on the basis of undue burden must show with specificity that the discovery requests [at] issue are objectionable.'"). Indeed, the Sheriff's Office has not provided any information about what specific investigative files are available and in what format. The sole basis the Sheriff's Office has provided for refusing Mr. Gonzalez's request is that no *OPR* investigative files exist for these two incidents, and the Court ordered production of *OPR* files specifically, so it is not required to produce any non-OPR investigative files.

The Court should reject this position. The Court already ordered the Sheriff's Office to produce responsive OPR files from 2020 and directed the parties to work cooperatively regarding the production of OPR files corresponding to responsive incidents Mr. Gonzalez identified in the *Henneberg* grievances (covering the 2017-2019 period). (*See* ECF No. 207.) Mr. Gonzalez requested "OPR" files and the Court's Order on Mr. Gonzalez's first motion to compel specified "OPR" files because the Sheriff's Office asserted that the OPR is charged with investigating grievances alleging physical misconduct by correctional officers against detainees. (*See, e.g.*, ECF No. 156 at 6 ("When the Sheriff's Office receives a grievance from a detainee who alleges physical misconduct by staff, the grievance is forwarded to the [OPR].").) The incidents involving Mr. █████ and Mr. █████ concern alleged physical misconduct by correctional officers against detainees. (Ex. C; Ex. E.)

The Sheriff's Office has stated there are no OPR files for these two grievances, but there are other investigative files. For the incident involving Mr. █████ the Sheriff's Office indicated that the Use of Force Review Unit investigated the incident and determined the use of force was reasonable. (Ex. B at 3, Feb. 12, 2026 Email from S. Branum.) The Sheriff's Office should be required to produce documents related to this investigation (including video footage) in lieu of an

OPR file. With respect to Mr. ▮▮▮▮▮ grievance, the Sheriff's Office has never contended it took no action in response to the grievance; it has asserted only that there is no OPR file. (Ex. B at 1-2.) Indeed, Mr. Gonzalez understands it is the Sheriff's Office's policy to timely investigate every grievance that is filed. Whatever investigation the Sheriff's Office undertook, under the Use of Force Review Unit or otherwise, it should be required to produce the documents related to that investigation (including video footage) in lieu of an OPR file.

## CONCLUSION

For these reasons, Mr. Gonzalez respectfully requests that the Court grant this motion and enter an order compelling the Sheriff's Office to produce (1) video footage related to 18 incidents alleging assaults by correctional officers in Division 9 elevators that the OPR investigated and determined were unsubstantiated; and (2) documents (including video footage) related to the Sheriff's Office's investigation of the ▮▮▮▮ and ▮▮▮▮ incidents, whether through the Use of Force Review Unit or otherwise.

Dated: March 27, 2026

CHRISTIAN A. GONZALEZ

By: /s/ *Andrew W. Vail*
Andrew W. Vail
Kaitlin M. Leskovac
Jacob P. Wentzel
Christina T. Lopez
Charles J. Johnson
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654
AVail@jenner.com
(312) 840-8688

*Attorneys for Plaintiff*

15